### LEWIS *v.* POEL.

1. FRAUD—EVIDENCE.
   Proving of fraud requires clear, convincing, and satisfactory proofs.

2. SAME—PREPONDERANCE OF EVIDENCE.
   Fraud must be affirmatively established by a preponderance of the evidence.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 24 Am Jur, Fraud and Deceit §§ 278–280.
[4–6] 24 Am Jur, Fraud and Deceit §§ 278, 284.
[7] 27 Am Jur 2d, Equity §§ 152, 154.
[8] 24 Am Jur, Fraud and Deceit § 207.

3. SAME—PROOF.

Fraud is not to be presumed but more is required than mere weight or preponderance of evidence to establish fraud; it is essential that the evidence be clear, unequivocal, convincing, cogent, and leave the mind well satisfied the allegations of fraud are true.

4. SAME—EVIDENCE—EXCHANGE OF PROPERTY—FIDUCIARIES.

Evidence presented in action against those alleged to be standing in the position of the deceased fiduciary of estate for fraud on a beneficiary of the estate in arranging transfer of hotel property belonging to the estate for less than its true value, consisting of (1) an appraisal made more than 10 years before the action for fraud was instituted, showing the hotel building to be worth then $47,500, (2) an agreement between the fiduciary and his client, another beneficiary of the estate, made for the purpose of settling the accounting of the parties between themselves, setting the value at $75,000, and (3) a memorandum made by the fiduciary in discussing some of the estate matters with the same client, showing that building had a value of $30,000, held, not to show fraud in the valuation, where there was no independent appraisal or independent testimony of the value of the building at any time.

5. SAME—EVIDENCE—EXCHANGE OF PROPERTY.

Proofs that property exchange transaction which occurred in the course of the administration of an estate, in which the proposed transaction was approved by the probate court after a hearing, a report by the guardian ad litem of a minor beneficiary of the estate, and the taking of extensive testimony, after which the estate was closed with the consent of the attorney guardian for the minor beneficiary, held, not to establish fraud in an action by an assignee of the minor beneficiary against those alleged to be standing in the position of the deceased fiduciary for fraud in arranging the exchange.

6. SAME—PROOFS—CONTINGENT FEE AGREEMENT.

Claim of fraud by assignee of minor beneficiary of an estate in action against those alleged to be standing in the position of the deceased fiduciary of the estate, grounded on contingent fee agreement between law firm of which fiduciary was a member and another beneficiary of the estate held, not to establish that any fraud was committed by the fiduciary against the minor beneficiary who was not a party to the contingent fee agreement, in case where the contingent fee agreement was known to the guardian of the minor before the estate was

closed, as shown by the fact that the guardian filed objections to the final accounting setting forth the contingent fee agreement.

7. EQUITY—LACHES—LAPSE OF TIME—INTERVENING CIRCUMSTANCES.
   Laches is an affirmative defense which depends not on mere lapse of time but principally on the requisite of intervening circumstances which would render inequitable any grant of relief to the dilatory plaintiff.

8. FRAUD—LACHES—FIDUCIARIES—DEATH.
   Action for fraud, brought by assignee of 1 beneficiary of an estate against those alleged to be standing in the position of the deceased fiduciary almost 8 years after the closing of several connected estates and after the discharge of the fiduciary, in which not only the fiduciary is deceased but also 2 other persons who had knowledge of some of the circumstances of the case, *held*, to be barred by laches.

Appeal from Kent; Hoffius (Stuart), J. Submitted Division 3 April 4, 1967, at Grand Rapids. (Docket No. 2,169.) Decided December 7, 1967. Rehearing denied January 30, 1968. Leave to appeal denied April 18, 1968. See 380 Mich 766.

Bill of complaint by Alphonse Lewis, Jr., assignee of Patricia Ettress, against Frederick W. Poel, Jr., Margaret M. Poel and Rosalind Bolt Larson for an accounting and other equitable relief. Judgment for defendants. Plaintiff appeals. Affirmed.

*Alphonse Lewis, Jr.,* for plaintiff.

*Frederick W. Poel, Jr.,* for defendants.

HOLBROOK, J. This matter concerns an action, grounded in fraud and violation of fiduciary relationship, brought by plaintiff against defendants for an accounting and other specified relief as to the distribution of 3 estates. From a judgment for

defendants, plaintiff appeals. From a multitude of facts, the following appear to be relevant:[1]

Stanley L. Barnett, Sr., died intestate on March 21, 1947, leaving a widow, Bessie Barnett, and a

---

[1] To aid in understanding the facts as presented, the people and property involved are as follows:

*People involved.*

(a) Stanley L. Barnett, Sr.: Died intestate on March 21, 1947. Owner and operator of the Barnett cocktail bar, restaurant, and hotel. Joint owner of the Barnett hotel property. Husband of Bessie Barnett and father of Stanley Barnett, Jr.

(b) Bessie Barnett: Died intestate on June 27, 1948. Joint owner of the Barnett hotel property. Widow of Stanley L. Barnett, Sr. and mother of Stanley Barnett, Jr.

(c) Stanley Barnett, Jr.: Died testate on November 22, 1948. Sole heir of Stanley Barnett, Sr., and Bessie Barnett. Father of Patricia Barnett by Louise Barnett. Common-law husband of Thelma Barnett.

(d) Louise Barnett: Former wife of Stanley Barnett, Jr., and mother of Patricia Barnett. Later Louise Coleman and now Louise Baldwin. Guardian and trustee of Patricia Barnett.

(e) Jesse Baldwin: Husband of Louise Barnett (also Coleman and now Baldwin).

(f) Patricia Barnett: Daughter of Stanley Barnett, Jr., and Louise Barnett. Beneficiary under her father's will of one-half of his estate. Married Bell, and subsequently married Ettress.

(g) Thelma Barnett: Common-law wife of Stanley Barnett, Jr. Beneficiary under Stanley Barnett's will of one-half of his estate.

(h) Menso R. Bolt: Attorney at law. Died on September 3, 1955. Successor administrator of the 3 estates. Husband of Rosalind Bolt (now Larson), a defendant herein.

(i) Rosalind Bolt (now Larson): Widow of Menso R. Bolt and a defendant herein.

(j) Frederick W. Poel: Attorney and former law partner of the successor administrator, Menso R. Bolt. A defendant herein.

(k) Margaret M. Poel: Wife of Frederick W. Poel and a defendant herein.

(l) Thomas Ward: Attorney at law. Died in 1951. Attorney for Louise Coleman, formerly Barnett.

(m) Arnold Levandoski: Attorney at law. Died on December 24, 1961. Successor attorney for Louise Baldwin, formerly Coleman.

(n) J. Robert Smolenski: Attorney at law. Guardian *ad litem* for Patricia Barnett.

(o) Alphonse Lewis, Jr.: Attorney at law. Former administrator of the 3 estates. Purchaser of the Barnett hotel property by land contract. Plaintiff herein as assignee of Patricia Barnett.

*Property involved.*

(a) The Barnett hotel property, including hotel, restaurant, and cocktail bar businesses.

(b) Property on Seldon avenue, Grand Rapids, Michigan.

(c) Property on Lafayette avenue, Grand Rapids, Michigan.

son, Stanley Barnett, Jr.  On June 27, 1948, Bessie Barnett died and on November 22, 1948, Stanley Barnett, Jr., also died.  The estates of Stanley L. Barnett, Sr., and Bessie Barnett had not been completely probated at the time of Stanley Barnett, Jr.'s, death.  Plaintiff herein, Alphonse Lewis, Jr., at one time was the administrator of all 3 estates but was removed as such; Menso R. Bolt was appointed successor administrator of said estates in January of 1949.

Stanley Barnett, Jr., left a 13-year-old daughter, Patricia Barnett.  Thelma Barnett claimed to be the common-law wife of Stanley Barnett, Jr., and shortly after his death she retained the law firm of Menso R. Bolt and Frederick W. Poel to establish her alleged common-law marriage and to protect her rights.  A contingent fee agreement was entered into between the law firm and Thelma Barnett.  About this same time (at least it would so appear), the last will and testament of Stanley Barnett, Jr., was discovered and duly admitted to probate.  The will provided that Thelma Barnett was to receive one-half of the estate and the remaining one-half was to go to Louise Coleman (the former wife of Stanley Barnett, Jr.) as trustee for Patricia Barnett.

As administrator, Mr. Bolt took over active management of the 3 businesses.  He was able to pay off all of the debts; and to pay Patricia Barnett and Thelma Barnett between $7,000 and $10,000 each during the period of administration.

The Kent county probate court approved an accounting which reflected a percentage payment for the management of the 3 businesses in accord with a claimed agreement.  The annual accounts were filed and approved during the years of administration.  The final account was filed on May 13, 1954, and approved on June 10, 1954; however, it was

later amended and approved as amended on October 18, 1954. The order assigning residue was executed on June 10, 1954, assigning an undivided one-half of all real and personal property to Thelma Barnett and an undivided one-half of all real and personal property to Patricia Barnett.

On closing the Barnett estates the administrator, Mr. Bolt, was discharged on December 8, 1954. He died in September of the following year, his estate being closed in December, 1957.

Louise Coleman had been appointed guardian and trustee of Patricia Barnett shortly after the death of Stanley Barnett, Jr., and was represented by an attorney throughout the probating of the estates; at first by Thomas Ward, now deceased, and subsequently by Arnold Levandoski, also now deceased.

Louise Coleman married Jesse Baldwin. On August 1, 1952, as guardian of Patricia Barnett she filed a petition stating that she had received an offer from Jesse Baldwin to purchase the bar business.

An exchange of property between Thelma Barnett and Patricia Barnett was contemplated whereby Patricia Barnett would be able to sell outright the bar business to Jesse Baldwin. To this end the petition requested court authority to sell the bar business to Jesse Baldwin, and court approval allowing the various attorney, fiduciary and management fees. In carrying out the contemplated transaction, J. Robert Smolenski, an attorney, was appointed guardian *ad litem* for Patricia Barnett. He made a thorough investigation of the proposed exchange of properties between Thelma Barnett and Patricia Barnett and filed a report recommending that the transaction be consummated, since it was in the best interest of the minor ward; and further, that a proposed compromise agreement as to the various fees was fair and equitable. A hearing

took place in the probate court as to whether the transaction would be in the best interests of the minor ward. Based upon the testimony taken at this hearing, the report of the guardian *ad litem,* and the petition of the general guardian and trustee, the probate court approved the transaction; *viz.,*: Patricia Barnett's guardian, on her behalf, transferred her interest in the Barnett hotel property and the Seldon avenue property to Thelma Barnett and the latter transferred her interest in the Lafayette avenue property and the bar business to the former. Thereafter, Patricia Barnett's guardian sold the bar business to Jesse Baldwin.

Because most of the cash earnings of the businesses had been distributed during the years of administration to Patricia Barnett and Thelma Barnett, there was insufficient cash to pay the various attorney, administrator, and management fees as allowed by the probate court. As compromised by the parties and as allowed by the probate court, the then unpaid fees came to $13,000 of which Patricia Barnett was to pay one-half and Thelma Barnett one-half. The administrator, Mr. Bolt, agreed to accept $6,500 from Patricia Barnett at the rate of $100 per month. Thelma Barnett agreed to pay the remaining $6,500 plus sums due under her contingent fee agreement on a monthly basis. In carrying out this agreement, she gave Mr. Bolt and Mr. Poel a mortgage dated October 1, 1952, on the Barnett hotel property to secure payment.

Payments on the mortgage were made until 1958. In 1959, with foreclosure pending, Thelma Barnett, represented by Mr. Lewis, Jr., brought an action to set aside the 1952 mortgage. The Kent county circuit court made certain adjustments regarding the indebtedness of Thelma Barnett to Mr. Poel and Mrs. Larson, the widow of Mr. Bolt, and refused to set aside the mortgage, saying: "The court has

not found that there was any fraud on the part of the law firm of Bolt & Poel." Shortly thereafter, Thelma Barnett quitclaimed her interest in the Barnett hotel property to Mr. Poel.

In 1961, Mr. Poel and Mrs. Larson sold the Barnett hotel property to Mr. Lewis, Jr., Yvette H. Pittman, and Nellie M. Baldwin under a land contract. Later, the sellers instituted summary proceedings to obtain possession before the Kent county circuit court commissioner. The land contract purchasers appealed to the circuit court, which granted summary judgment for plaintiffs. That suit came to this Court and resulted in the decision of *Larson* v. *Pittman* (1966), 3 Mich App 348.

The present action arises out of an assignment of rights, claims, et cetera, dated March 6, 1962, from Patricia Ettress, formerly Patricia Barnett, to Alphonse Lewis, Jr., plaintiff herein.[2] The action was begun on June 1, 1962. Plaintiff's complaint was met by a motion to dismiss, which was granted. An appeal to the Supreme Court from this dismissal resulted in the decision of *Lewis* v. *Poel* (1965), 376 Mich 167. Therein the Supreme Court referred the matter back to the trial court stating at pp 169, 170:

"We do not decide whether, under current court rules, a properly prepared, duly supported, and legally unmet motion for summary judgment should be granted as against this bill. As against defend-

---

[2] The assignment reads as follows:

"Know All Men by These Presents that I, Patricia Ettress, for and in consideration of the sum of $1 and other valuable considerations, hereinbefore paid by Alphonse Lewis, Jr., the receipt of which is hereby acknowledged, do hereby transfer, convey, set over and assign to said Alphonse Lewis, Jr., all my right, title, claim, interest or causes of action of any kind or nature against Frederick W. Poel, Rosalind Bolt Larson, the estate, heirs and assigns of Menso R. Bolt, the estate, heirs or assigns and law firm of Arnold Levandoski, and do hereby constitute said Alphonse Lewis, Jr. my attorney and agent in fact but at his own cost and expense to enforce and effectuate the full enjoyment of said rights."

ants' said motion to dismiss, plaintiff was entitled to a fair hearing of the merits; also of the affirmative defenses as pleaded."

At trial, plaintiff alleged fraud[3] in that (1) Bolt and Poel had a secret agreement or agreements with Thelma Barnett as to the transfer of assets and payment of additional fees, and (2) Patricia Barnett, plaintiff's assignor, was injured by reason of this alleged fraud. Briefly, plaintiff's theory is that the concealment of the contingent fee agreement between Bolt and Poel and Thelma Barnett until the lawsuit of the latter against the former in 1960, together with certain papers giving the assets of the estate various higher valuations than the valuation stated in the final account and the transfer of estate assets to Thelma Barnett, injured plaintiff's assignor.

The trial court, after a fair hearing on the merits, entered a judgment of no cause of action against plaintiff. Two reasons for the judgment were set forth in the trial court's opinion: plaintiff was guilty of laches and plaintiff failed to meet the burden of proof. Appealing from this judgment plaintiff raises several lengthy questions on appeal; we condense and summarize these questions as follows: (1) Whether the defense of laches is available to defendants; and (2) whether the defendants are guilty of fraud by reason of payments received under the contingent fee agreement with Thelma Barnett and the transfer of assets to Thelma Barnett.

Fraud, while easily claimed, is not easily proven. *Mallery* v. *Van Hoeven* (1952), 332 Mich 561. The proving of fraud requires clear, convincing, and

---

[3] By reason of CL 1948, § 704.39 (Stat Ann 1962 Rev § 27.3178 [290]) it would appear that fraudulent concealment on the part of defendants was the only avenue open to plaintiff in maintaining his action.

satisfactory proofs—it must be affirmatively established by a preponderance of the evidence. *Gardner v. Gardner* (1945), 311 Mich 615; *Dieterle v. Pearll* (1945), 312 Mich 134; *Harvey v. Lewis* (1959), 357 Mich 305. Fraud is not to be presumed and something more is required than mere weight or preponderance of evidence, to establish it; it is essential that evidence be clear, unequivocal, convincing, cogent, and leave the mind well satisfied that the allegations are true. *Nicholson v. Scott* (ED Mich 1943), 50 F Supp 209, 212.

In disposing of the instant case, the trial judge in a thorough and well-worded opinion stated as follows:

"The testimony further indicates that the plaintiff is relying upon, I would say, two principal theories of his case, one of these being that there was testimony that an appraisal was made, known as the Fuller appraisal which has been received in evidence here as exhibit No. 11, the appraisal being made on February 22, 1952, indicating that the building [Barnett hotel building] here involved was worth the sum of $47,500.

"There is further testimony here that at some time, I believe it is in 1949, that Mr. Poel and Mrs. Barnett signed an agreement on June 11, 1949, copy of which has been received in evidence as exhibit No. 18, that the building at 58–60 Ionia has a value of $75,000, this agreement to be used for the purpose of settling the accounting of the parties hereto.

"It is further the claim of the plaintiff therefore, based upon these two documents, that the building was of higher value than is represented in the inventories and also there is the claim made that a memorandum which has been received in evidence here as exhibit No. 4, which was apparently used by Mr. Poel in discussing some of these matters with his client, Thelma Barnett, indicated that the building had a value of $30,000. There has been, how-

ever, no separate and independent testimony in this case as to the value of the building at any given date or at the present date.

"The plaintiff relies then exclusively upon the documents which I have spoken of here, namely, the appraisal, exhibit No. 11, the alleged agreement which has been received as exhibit No. 18, and then finally a document which was used by Mr. Poel and Mrs. Barnett as exhibit No. 4. There has been no independent appraisal as of that date, there has been no independent testimony of the value of the building.

"I think it should further be pointed out that the Stanley Barnett, Jr., estate was not closed and the accounts were not allowed until some time in 1954, many months after the building apparently was transferred in 1952. The result of this is that the court has no independent evidence to avail itself of at this time as to the true value of the building on the date of the transfer which apparently was some time in 1952, by reason of the fact that in the guardianship estate the report of the guardian *ad litem* is dated August—is subsequent to the hearing on August 15, 1952, and the licenses to sell and the conveyances are made immediately subsequent thereto.

"It should be pointed out, however, that all of the estates were closed with the full consent of the guardian for the minor here involved. At all times the guardian had counsel, first having Mr. Lewis, second having Mr. Thomas Ward, third having Mr. Arnold Levandoski. It is further apparent that the contingent fee agreement was known to the guardian by reason of the fact that she has filed three separate and distinct objections setting forth the contingent fee agreement.

"It should further be pointed out that there has been no showing in this case of any damage to plaintiff herself [*i.e.*, plaintiff's assignor]. There has been no testimony that the transfer of the assets which apparently was inquired into in a much

broader way than one might have suspected by the report of the guardian *ad litem* and the taking of extensive testimony indicates there was substantial evidence in probate court. There is, further, no independent testimony to show that the exchange which was consummated in 1952 was unfair, inequitable, or unjust at that time. All that there is shown is that there were some appraisals or some figures listed of different amounts for the value of this particular property than those that are set forth in the estates themselves.

"It should be pointed out that in the Patricia Barnett guardianship, that even after all of the statements made about the value of this particular property being worth $21,000, and that the liquor license was worth $21,000, that there was on August 13, 1954 [later corrected to 1952], an inventory filed with the court which indicated that the liquor business was subject to a contract of sale to Jesse Baldwin, approximate balance $17,000, which was apparently filed with the court before or at least dated before the report of the guardian *ad litem*.
\* \* \*

"I come next to the fact that I have had no testimony from the assignor herself. The assignor has not made any appearance in court to show what her knowledge of the situation was. She was born on August 28, 1935, and attained her majority then on August 28, 1956. These estates were all closed at that particular time. She attained her majority then a little less than six years before this suit is brought claiming fraud. We are handicapped in this case by the fact that three of the parties are now dead or three of the people who have knowledge of some of these circumstances are now dead. Mr. Menso R. Bolt is deceased, Mr. Arnold Levandoski is deceased, Mr. Thomas Ward is deceased.

"We have then a suit against Mr. Poel who is the attorney representing the fiduciary in these three estates and the widow of the fiduciary. \* \* \*

Mr. Bolt's estate was assigned and closed on February 24, 1958.

"I do not see and I am unable to understand how the widow and the beneficiary of this estate can be held liable for any alleged wrong by Mr. Bolt. There has been no other showing about this except the offering of the probate file in Mr. Bolt's estate. Mrs. Larson, his widow, has been here in the courtroom but she has not testified and neither has there been a showing of any assignment to her of any of these interests. There has been no showing of any other way in which she is liable.  *  *  *

"There are many cases which say that one must look at the circumstances under which the alleged fraud arose. Counsel claims that he [*i.e.,* his assignor] is damaged by the fact that there was a contingent fee arrangement between Bolt and Poel and Thelma Barnett. I am unable to see how this could have damaged  *  *  *  plaintiff's assignor in any way. Whether Mrs. Barnett paid the firm of Bolt and Poel $100 in addition to the fees set forth in the probate court or $1,000 or $10,000 does not have anything to do with the alleged claim of fraud here.

"I am unable to see and I do not feel that the plaintiff has carried the burden in proving a fraud which has damaged this plaintiff [*i.e.,* his assignor] in any respect. The plaintiff [*i.e.,* plaintiff's assignor] received an undivided one-half of all of the assets, that is, the bar business, the hotel business, the restaurant business, the building itself and the two pieces of personal property. The plaintiff's assignor had competent and experienced counsel, had a competent and experienced guardian *ad litem* appointed for her to inquire into these matters at the time of the exchange of the properties in 1952. The plaintiff's assignor had a guardian who was her own mother, who has testified here in court, who appeared to be a woman of intelligence and with some ability. She had competent counsel throughout, and it seems to me that to permit this

plaintiff to come into court some eight years after the closing of all of these estates and after the discharge of the fiduciary and sue one of the attorneys and the widow of one of the fiduciaries for acts which at this time are not conclusive as to fraud would be most unfair and unjust. There has been no showing that the exchange between the parties, that is, between the plaintiff's assignor and Thelma Barnett, was in any way inequitable. There was no reliance placed upon the alleged valuation of $47,-500 by any of the parties. There was no reliance placed upon the statement of 1949 that the building was then worth $75,000, the $30,000 was in exhibit 4 only a negotiation between Mr. Poel and Thelma Barnett, and does not show anything about true value at that particular time, but only that that was the figure which was used in the determination of the fees between the parties.

"I am, therefore, of opinion that the plaintiff has failed to carry the burden of proof that there was fraud here which has brought damage to this particular plaintiff's assignor. Accordingly, a judgment of no cause of action may be entered."

We are in accord with the findings of fact as determined by the trial judge in his opinion.

In dealing with the other issue raised by appellant, that of laches, we find that in the case of *Lewis* v. *Poel, supra,* the Michigan Supreme Court defined laches as (p 169):

"an affirmative defense which depends not on mere lapse of time but principally on the requisite of intervening circumstances which would render inequitable any grant of relief to the dilatory plaintiff (*Kelley* v. *Hoogerhyde,* 314 Mich 37; *Plasger* v. *Leonard,* 316 Mich 174)."

Judge Hoffius, in his opinion stated:

"We are handicapped in this case by the fact that three of the parties are now dead or three of the

people who have knowledge of some of these circumstances are now dead. Mr. Menso R. Bolt is deceased, Mr. Arnold Levandoski is deceased, Mr. Thomas Ward is deceased.    \*   \*   \*

"In this case the plaintiff has alleged fraud. The fiduciary against whom he alleges the fraud is deceased. There are substantial authorities that the court has the right to inquire into probate matters which are closed in the court, if there can be shown fraud. The usual statute of limitations on fraud or wrongs to property or person is three years. This suit is brought almost eight years after the closing of all of the estates and after the fiduciary has been discharged.

"The court further is aware that if there has been a concealment of any fraudulent claims that the statute is extended for an additional period of two years. There has been no testimony here in open court that is any different than that testimony which was brought out in open court in January of 1960. This suit is filed June 1, 1962.    \*   \*   \*

"It seems to me that to permit this plaintiff to come into court some eight years after the closing of all of these estates and after the discharge of the fiduciary and sue one of the attorneys and the widow of one of the fiduciaries for acts which at this time are not conclusive as to fraud would be most unfair and unjust."

This finding with which we agree meets and satisfies the test set forth in *Lewis* v. *Poel, supra,* and we conclude that plaintiff's cause is barred by laches.

Affirmed. Costs to appellees.

Burns, P. J., and R. M. Ryan, J., concurred.