### DETROIT *v* GENERAL FOODS CORPORATION

1. ADMINISTRATIVE LAW—ADMINISTRATIVE PROCEDURES ACT—APPLICABILITY.

    The administrative procedures act applies only to state administrative agencies (MCLA 24.101 *et seq.*).

2. TAXATION—MUNICIPAL CORPORATIONS—APPEAL TO TAX COMMISSION.

    A city, prior to July 17, 1969, was precluded from appealing a decision of a city tax administrative agency to the State Commissioner of Revenue.

3. MUNICIPAL CORPORATIONS—ORDINANCES—EFFECTIVE DATE.

    Ordinances passed to take effect at a future date are to be understood as speaking from the time they go into operation and not from the time of passage.

4. EQUITY—LACHES—PREJUDICE.

    A 90-day period between the rendering of a decision by an administrative agency and the filing for judicial review is not dilatory enough to invoke laches where no prejudice is shown in the record.

5. APPEAL AND ERROR—ADMINISTRATIVE AGENCIES.

    A court will overturn a decision of an administrative tribunal only when such decision is contrary to law or is not supported by the necessary competent, material, and substantial evidence.

6. STATUTES—EXEMPTIONS—CONSTRUCTION.

    Exemptions to statutes are to be strictly construed and exemptions are not to be lightly given.

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law § 202.
[2] 2 Am Jur 2d, Administrative Law § 539 *et seq.*
[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 351.
[4] 2 Am Jur 2d, Administrative Law §§ 718, 719.
[5, 9] 2 Am Jur 2d, Administrative Law § 678 *et seq.*
[6] 50 Am Jur, Statutes § 431.
[7, 8] 51 Am Jur, Taxation § 304 *et seq.*

7. TAXATION—EXEMPTIONS—STORED GOODS.

> The word "stored" as used in exemption provisions of tax statutes means for the purpose of storage only.

8. TAXATION—EXEMPTIONS—STORED GOODS—DOING BUSINESS.

> The maintenance of goods in a public warehouse inside a city for the purpose of regularly filling orders and the regular filling of orders from such stock to customers in the city constitutes doing business in the city as a matter of law; the maintenance of the goods in the warehouse coupled with the use of the goods to fill orders does not constitute "mere storage" within an exemption in the city's income tax ordinance.

9. ADMINISTRATIVE LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE — TAXATION — EXEMPTIONS.

> An administrative agency determination that a corporation was not doing business in a city and thus governed by an exemption in the city's income tax ordinance was erroneous where the corporation alleged sufficient facts to support a finding that it was not doing business in the city, but did not present sufficient evidence to substantiate those allegations.

Appeal from Wayne, Nathan J. Kaufman, J. Submitted Division 1 December 15, 1971, at Detroit. (Docket No. 10437.)   Decided March 21, 1972.

Complaint by the City of Detroit for an order of superintending control to reverse a decision of the Detroit Income Tax Board of Review, holding that General Foods Corporation was not subject to the Detroit income tax.   Defendant's motion to dismiss denied.   Case remanded to the Detroit Income Tax Board of Review.   Defendant appeals. Affirmed with instructions.

*Michael M. Glusac,* Corporation Counsel, and *Joseph Maisano* and *Julius C. Pliskow,* Assistants Corporation Counsel, for plaintiff.

*McClintock, Fulton, Donovan & Waterman,* for defendant General Foods Corporation.

Before: Holbrook, P. J., and T. M. Burns and Danhof, JJ.

Holbrook, P. J. This is an appeal from an order of superintending control dismissing defendant-appellant's motion to dismiss the complaint and remanding the matter to the Detroit Income Tax Board of Review to redetermine the issue of whether the defendant General Foods Corporation is subject to the Detroit income tax for the years of 1966, 1967, and 1968.

The pertinent facts have been stated by defendant-appellant and agreed to by plaintiff except as to revised figures which have been supplied by plaintiff city, as follows:

On May 16, 1969, appellant General Foods Corporation received from Mr. A. L. Warren, Director of the Income Tax Division of appellee, City of Detroit, notice of three separate Detroit city income tax assessments for the fiscal years 1966, 1967, and 1968 as follows:

| Year | Assessment No. | Amount |
|------|----------------|--------|
| FY 4–66 | L45671 | $10,472.91[1] |
| FY 4–67 | L45673 | 18,388.00 |
| FY 3–68 | L45672 | 15,920.64[2] |
| | | $44,781.55[3] |

On June 2, 1969, appellant filed a timely notice of protest of the above assessments with the controller of the City of Detroit, and a hearing before the controller, Bernard W. Klein, was duly held on July 16, 1969. On August 8, 1969, the controller issued his opinion upholding the assessments and

[1] Revised to read $8,185.58.

[2] Revised to read $14,715.52.

[3] Revised to read $41,289.10.

determining appellant to be subject to the City of Detroit Income Tax Ordinance (Ordinance 900–F).

On August 15, 1969, appellant filed a timely notice of protest of the aforesaid decision of the controller with appellee, Detroit Income Tax Board of Review (hereinafter the Board). The record of the proceedings before the controller was thereafter forwarded to the Board, and on November 5, 1969, a hearing was held before the Board. Shortly after the hearing, additional information and documents were sent to the Board, at its request, by appellant, and on December 9, 1969, the Board rendered its decision which overturned the aforesaid assessments on the grounds that appellant was not "doing business" in the City of Detroit under the provisions of the Detroit Income Tax Ordinance, *supra*.

On March 9, 1970, three months after the decision of the Board, appellee, City of Detroit, filed a complaint for superintending control, praying that the circuit court issue an order to show cause why an order of superintending control should not be entered reversing the decision of the Board. Appellant duly answered said complaint and filed a motion to dismiss. This motion was denied by Judge Nathan Kaufman of the Wayne County Circuit Court in an opinion dictated from the bench on September 8, 1970, and the case was remanded to the Board. Appellant filed timely objections to said opinion, but on October 16, 1970, two orders were entered pursuant to such opinion, denying appellant's motion to dismiss and remanding the proceedings to the Board.

On October 20, 1970, a claim of appeal from the above orders was filed by appellant in this Court.

Defendant-appellant states two issues to be considered by the Court which we rephrase and deal with in proper order.

I.

Under the facts in this case, was the writ of superintending control available to plaintiff city to review the adverse decision of the Detroit Income Tax Board of Review?

Defendant company asserts that (1) if the city had a right to appeal the decision of the Board but neglected to do so, it has lost any right to request a writ of superintending control; (2) if the city did not have the right, the circuit court should have granted defendant's motion to dismiss because the plaintiff was guilty of laches; (3) plaintiff should have filed under the administrative procedures act within 30 days after the Board's decision; however, it failed to do so, and is, therefore, barred from seeking a writ of superintending control; and (4) the plaintiff may have had the right to appeal to the State Commissioner of Revenue under the Michigan city income tax act, but this question was not answered by the trial judge and he erred in ignoring the question.

Plaintiff city claims that it did not have the right to appeal to the State Commissioner of Revenue because he lacked jurisdiction to hear the appeal. Plaintiff could not appeal the decision of the Board under the state administrative procedures act as the Board did not constitute an agency of the state. The remedy before the plaintiff was to seek a writ of superintending control, and the circuit court was correct when it denied the motion to dismiss as the plaintiff was not guilty of laches since the defendant had not been prejudiced in any way.

GCR 1963, 711.2 states:

"Policy as to Use of the Order of Superintending Control. The order of superintending control should not be issued if another plain, speedy and

adequate remedy is available to the party seeking the order."

In 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 56, under the committee notes following GCR 1963, 711.2, the committee quotes from 112 ALR 1351 at 1373:

"The generally accepted view is that a court will exercise its superintending control over inferior tribunals only in extreme cases and under unusual circumstances."

The committee also quoted from 112 ALR 1351 at 1384:

"A court will refuse to exercise its power of superintending control, where the party seeking to invoke such power has not exhausted his remedies in the tribunal sought to be controlled or has an adequate remedy in another court inferior to the court whose power is invoked."

In authors' comments on p 57 it is stated:

"The determination as to the adequacy of another available remedy rests within the sound discretion of the court which has been petitioned to exercise superintending control."

Also see *Lenz* v *Mayor of Detroit,* 343 Mich 599 (1955).

Plaintiff could not appeal under the administrative procedures act as it applies only to state agencies as is stated in the title of the act, 1952 PA 197:

"An act to prescribe the rights of the public in the administrative procedure *before state administrative agencies;*  *  *  *  ." (Emphasis supplied.)

MCLA 24.101(1); MSA 3.560(21.1) defines agency as:

" 'Agency' means any state board, commission, department, bureau or officer, authorized by law to make rules or to adjudicate contested cases, except the workmen's compensation commission, the employment security commission, the department of revenue, the public service commission and those in the legislative and judicial branches."[4]

This Court has also recognized that the State Administrative Procedure Act applies only to state administrative agencies. *Righter* v *Adrian Civil Service Commission,* 1 Mich App 468, 473 (1965).

Before July 17, 1969, the city was precluded from appealing to the State Commissioner of Revenue, as MCLA 141.693; MSA 5.3194(103) allowed only:

"A taxpayer, employer or other person aggrieved by a rule or regulation adopted by the administrator or by a determination of the board of review on a final assessment, * * * ."

In MCLA 141.504; MSA 5.3194(4), providing for the publishing of rules and regulations by a State Commissioner of Revenue, it is again stated:

" * * * governing the form and manner of appeal from a final determination by a city affecting a *taxpayer, employee or other person* * * * ." (Emphasis supplied.)

Therefore, before July 17, 1969, the city was definitely precluded from appealing to the State Commissioner of Revenue. However, the statute was amended by 1969 PA 42, § 1, effective July 17, 1969, MCLA 141.693; MSA 5.3194(103) so the city was also allowed to appeal from a determination by the Board. This amendment took effect approximately five months before the Board rendered its decision and it would seem the city could appeal

---

[4] Repealed and replaced by MCLA 24.203; MSA 3.560(103) and MCLA 24.207; MSA 3.560(107), 1969 PA 306, effective July 1, 1970.

on the basis of this statute. However, a city cannot adopt an amendment except as provided by the Legislature. MCLA 141.503; MSA 5.3194(3). Under the authority of MCLA 141.503; MSA 5.3194 (3), the city adopted this amendment in its ordinance provisions so that it took effect on January 1, 1970. The ordinances adopted are deemed to take effect on or after January 1, of the following year unless otherwise provided. Since the city council did not provide otherwise, the ordinance took effect on January 1, 1970.

Statutes passed to take effect at a future date are to be understood as speaking from the time they go into operation and not from the time of passage. *Weaver* v *Haney,* 32 Mich App 424 (1971). It seems logical to extend this rule to city ordinances as well as state statutes.

Therefore, when the Board rendered its decision on December 9, 1969, this was before the effective date of the ordinance, so the city could not appeal from the decision because it was rendered prior to the effective date of the ordinance.

Since the city had no appeal under the administrative procedures act or the city income tax act, the only way it could obtain a review was to file for an order of superintending control in the circuit court.

Under GCR 1963, 711.3, the writ of certiorari is superceded and an order of superintending control shall be used in its place. In the case of *Hartz* v *Wayne Circuit Judge,* 164 Mich 231, 234 (1910), it is stated:

"The power of reviewing upon common-law certiorari even the judicial proceedings of inferior tribunals and bodies, which are not according to the course of the common law, has long been exercised. The right is not limited to an inquiry as to the

jurisdiction of the inferior tribunal or body over the particular subject-matter, but extends to the manner in which that jurisdiction is exercised. It may reach all errors of law."

Also see *Erlandson* v *Genesee County Employees' Retirement Commission,* 337 Mich 195 (1953).

Though it has been determined the city had no other course of action to obtain review, the question is raised if whether the 90-day period between the rendering of the decision by the Board and the plaintiff's filing a complaint for superintending control was dilatory or negligent enough to be barred by laches.

The rule in Michigan is stated in 1 Callaghan's Michigan Pleading and Practice (2d ed), § 8.28, p 224, as follows:

"Laches is an equitable concept not governed by rigid rules, and its application apparently depends upon the facts of each case. Although it may be considered with other facts and circumstances, lapse of time alone is insufficient to constitute laches, but there must also be a showing of prejudice to the defendant, or, as the rule is succinctly stated, laches is such neglect to assert a right as, taken in connection with lapse of time more or less great, and other circumstances causing prejudice to the adverse party, operates as a bar in a court of equity."

Michigan cases which follow this rule are: *Kelley* v *Hoogerhyde,* 314 Mich 37 (1946); *Rose* v *Fuller,* 21 Mich App 172 (1970); *Lewis* v *Poel,* 9 Mich App 131 (1967); *Plasger* v *Leonard,* 316 Mich 174 (1946); *Lewis* v *Poel,* 376 Mich 167 (1965).

Defendant asserts no prejudice in its brief and none is shown in the record, and in intervening period of 90 days does not seem to be of such length

as to justify plaintiff's complaint being barred because of laches.

The trial judge did not err as to issue one.

## II.

Whether the record before the City of Detroit Income Tax Board of Review contains sufficient evidence from which a determination could be made that defendant was not doing business in the City of Detroit for the years in question?

Defendant asserts that the trial judge considered the transcript of the hearing before the Board, but failed to consider, as a part of the record, several other important sources of fact presented to the Board, including a copy of the records of the proceeding before the Detroit city controller, resubmitted to the Board by both parties prior to the hearing before the Board, and documents submitted by the defendant to the Board, at the Board's request, subsequent to the hearings. When the trial judge rendered his opinion, he stated no sworn testimony was taken before the Board, no exhibits were introduced, witnesses were not cross-examined, no findings of fact were made by the Board, and the Board must make findings of fact.

Plaintiff claims that the hearing before the Board was conducted on a very informal basis and the various statements made by the parties were not supported by any evidence, exhibits, documents, or other confirming data. If the statements made before the Board were in fact accepted as evidence, then it is submitted the Board committed error as a matter of law when it refused to find for the plaintiff.

In MCLA 141.691; MSA 5.3194(101) the Legislature required the Board to adopt rules governing the procedure for hearings and this it has done.

It should be noted that rule 9 specifically provides that the hearings shall be informal, and in this case the hearing was conducted in the manner provided for in rule 9.

Defendant-appellant asserts that as the hearing was informal, it can be assumed the Board accepted as evidence the statements made by the parties and rendered its decision after a review of all of the evidence submitted. Further that all the parties were aware of the Board's informal hearing procedures, and plaintiff did not object to this procedure when the Board was conducting the hearing nor did the plaintiff make any objection to the Board's request that defendant submit additional information.

When a court reviews an administrative tribunal decision, it reviews the original record to determine if the decision is supported by competent, material and substantial evidence, and will overturn a decision only when such decision is *contrary to law,* or *is not supported by the necessary competent, material* and *substantial* evidence. Const 1963, art 6, § 28. We point out that under certiorari we are without power to determine issues of fact that are disputed. In the instant case the facts are undisputed. The question presented is one of law. See *Hartz* v *Wayne Circuit Judge, supra.*

It is defendant's position that under the previously quoted terms of the Uniform City Income Tax Ordinance,[5] 1964 PA 284; MCLA 141.605(a); MSA

---

[5] "Sec. 5. 'Doing business' means the conduct of any activity with the object of gain or benefit, except that it does not include:

"(a) The solicitation of orders by a person or his representative in the city for sales of tangible personal property, which orders are sent outside the city for approval or rejection and, if approved, are filled by shipment or delivery from a point outside the city.

"(b) The solicitation of orders by a person or his representative in the city in the name of or for the benefit of a prospective customer of a person, if orders by the customer to such person to

5.3194(15)(a), which was adopted by the City of Detroit (Ordinance 900–F) that its operations did not constitute doing business in the City of Detroit.

There were two divisions of the defendant corporation that conducted business activity in the Detroit area: (1) Birds Eye Division and (2) H & R Coffee Service branch of the Institutional Food Service, Division of General Foods.

According to defendant-appellant, the only activity of the Birds Eye Division in Detroit was the placing of its products in a public cold storage warehouse where they were stored until released to customers. There were no Birds Eye employees in Detroit, and orders for Birds Eye products were taken by independent brokers who sent them to Livonia for acceptance. When an order was approved, the Birds Eye District Sales Manager authorized the public warehouse to release the products covered by the order and the goods were then delivered to its customers including those in the City of Detroit.

It is the contention of General Foods that their activities of the Birds Eye Division constitute "mere storage" as that term is used in § 5(c) of the ordinance and, therefore, that it is not "doing business" in Detroit.

On the other hand, the city takes the position that the maintenance of goods in a public warehouse for the purpose of regularly filling orders and the regular filling of orders from such stock of goods constitutes more than "mere storage" and, therefore, amounts to the doing of business in the City of Detroit.

---

enable the customer to fill orders resulting from the solicitation are orders described in paragraph (a).

"(c) *The mere storage of personal property in the city in a warehouse neither owned nor leased by the taxpayer.*" (Emphasis supplied.)    MCLA 141.605; MSA 5.3194(15).

We determine as a matter of law that defendant-appellant's Birds Eye operations do not fall into the exceptions set forth in § 5(a) and § 5(b) of the ordinance because the frozen food products are stored in and delivered to its customers from public warehouses located within the City of Detroit.

We now consider whether under the undisputed facts the Birds Eye operation of defendant-appellant is a legal exception to doing business in the City of Detroit under § 5(c) of the ordinance.

When interpreting statutes the general rule is:

"As the well established rule has been otherwise stated, legislative intent must be determined from a consideration of all of the provisions of the enactment, and the purpose sought to be accomplished by it, and the courts seek to find a meaning which is reasonable and which gives effect to all parts thereof. To effect this purpose, every clause and every word of the enactment is presumed to have some force and meaning, and one part of a statute must not be so construed as to render another part nugatory or ineffective. If there is any proper way in which claimed inconsistencies may be reconciled, the court will do so." 21 Michigan Law & Practice, Statutes, § 95, p 101.

The statute reads as follows:

" 'Doing business' means the conduct of any activity with the object of gain or benefit, except that it does not include:
"  *   *   *

"(c) The mere storage of personal property in the city in a warehouse neither owned nor leased by the taxpayer."

When interpreting exemption statutes they are to be strictly construed and exemptions are not to be lightly given. *David Walcott Kendall Memorial School* v *Grand Rapids,* 11 Mich App 231 (1968);

*Hospital Purchasing Service of Michigan* v *City of Hastings,* 11 Mich App 500 (1968) ; *Detroit* v *Detroit Commercial College,* 322 Mich 142 (1948).

Words and phrases are given their usual and customary meanings unless the Legislature has otherwise defined. 21 Michigan Law & Practice, Statutes, § 94, p 98. The first word to be interpreted is "mere", and mere has been interpreted to mean "only this, and nothing else, and nothing more than". 27 Words and Phrases, p 172.

One definition of "storage" found in Webster's is "the safekeeping of goods in a warehouse or other depository". Webster's Seventh New Collegiate Dictionary, p 865.

The word "warehouse" is defined in 93 CJS, Warehouse and Safe Depositories, § 1, p 395 as:

"In a broad sense and as used in common parlance, a 'warehouse' is a building or place used for storing goods, wares, and merchandise, whether for the owner or for someone else, and whether it is a public or private warehouse; a place adapted to the reception and storage of goods and merchandise."

Since the warehouse in (c) can neither be owned nor leased by the taxpayer, the warehouse cannot be a "private" warehouse but must be a "public" warehouse which is defined as:

"A 'public warehouse' is a place that is held out to the public as being one where any member of the public, who is willing to pay the regular charges, may store his goods and then sell or pledge them by transferring the receipt given him by the keeper or manager." 93 CJS, Warehouse and Safe Depositories, § 1, p 396.

Reading the statute as a whole, we note that §§ (a) and (b) make exemptions for *solicitation* and *shipment,* but the shipment must be from outside

the city, while (c) exempts only storage of personal property without reference to solicitation or shipment from the warehouse. This must mean the storage is for some purpose other than holding property for shipment from the public warehouse as a result of a sale made in the city. Examples of this are such as when a taxpayer is shipping from a public warehouse to his private warehouse or shipping from a public warehouse to a customer outside the city.

The Supreme Court has had occasion to interpret the word "stored" when a question arose concerning the exemption of personalty from the general property tax stored in a public warehouse (MCLA 211.9; MSA 7.9) and determined that stored meant for the purpose of storage only. *Wender Presses Inc v Detroit,* 376 Mich 335 (1965). The Court held the exemption of personal property from the property tax is limited to goods stored and would not include property which is displayed, repaired, cleaned, or repainted while located in the warehouse. Thus, it seems as though the Supreme Court has taken a very restrictive interpretation of the word "stored or storage" and restricts it to only the *housing of goods in a warehouse.* In the instant case, the Birds Eye Division sales are handled through independent brokers and the deliveries made to the public warehouse are for resale purposes. When the sales have been approved by an office outside the city the goods are then shipped from the public warehouse, located in the city, to customers in the city.

This method of operation is not an exception the Legislature intended in MCLA 141.605(a); MSA 5.3194(15)(a). We determine that under the facts presented the defendant was "doing business" in

.

the City of Detroit as a matter of law and is subject
to the income tax ordinances.

In fairness to the Board, we wish to point out
that it did not have the benefit of the interpretation
of the statute declared herein upon which to base
its opinion.

The operations of defendant-appellant's H & R
Coffee Service according to defendant-appellant do
not constitute "doing business" in the City of Detroit
because such activities fall within the exception of
§ 5(a) of the Ordinance No. 900–F.   Section 5(a)
excepts from the "doing business" category solicita-
tion of orders which are sent outside the city for
approval and are filled by shipments originating
outside the city.   All initial orders from customers
in the city must be accepted and approved by the
Romulus office and all deliveries originate from the
Romulus warehouse.   While route drivers have a
small amount of leeway in determining the weekly
quantities delivered, nevertheless the Romulus office
retains overall control of customer orders, and a
route driver cannot fill any order or deliver any
goods to a customer unless the Romulus office has
given its prior approval.

In support of plaintiff's position that there was
not sufficient evidence presented concerning the
H & R operation of defendant-appellant, for the
Board to determine that it did not constitute doing
business in the city, the plaintiff states in its brief
as follows:

"It is evident from a reading of the record that
the hearing before the Income Tax Board of Review
was conducted on a very informal basis; various
statements were made by the parties involved which
were not supported by any evidence, exhibits, docu-
ments or other confirming data.   For example,

* * * the transcript * * * , the following statement was made by counsel for appellant:

" 'I think I should tell the Board that although the acts are substantially the same as they were the last time we were here, I have learned of one other method of doing business that I think I should state to the board.'

"The acts which counsel alleged were 'substantially the same' do not appear anywhere in the record. In another instance the following colloquy * * * was reported between Mr. Frank Stella, Mr. Solazzo, Mr. McClintock and Mr. A. L. Warren:

" '*Mr. Stella:* There is another item that was brought into the picture, this Electri-Cooker. General Foods owns the machines. Do they service the machines? By that, I mean servicing the nuts to the customers that have the machines?

" '*Mr. Solazzo:* I'm not familiar with the Electri-Cooker operation at all.

" '*Mr. Stella:* How about the coffee company? Mr. Warren mentioned that you had serviced the urns, the coffee urns.

" '*Mr. Solazzo:* As Mr. McClintock says, it is unfortunate that Stan Perry could not be here, because he is in charge of that.

" '*Mr. Stella:* You don't know whether they supply coffee urns for the use of coffee, the restaurant division?

" '*Mr. Solazzo:* I don't know. We ship from the Livonia operation to that H & R branch, providing them with whatever needs—

" '*Mr. Stella:* The same thing with the nuts?

" '*Mr. Solazzo:* No, that comes out of the plant directly to some warehouse and is reshipped from there.

" 'I'm not familiar with that particular operation.

" '*Mr. Stella:* I'm sure they pay personal property tax on the machines in the City of Detroit.

" '*Mr. McClintock:* Obviously they are not sold, they are simply put in a customer's restaurant,

whatever it is, and I presume for the sole purpose of supplying nuts or coffee.

" '*Mr. Stella:* I was wondering where these were serviced out of. If out of the City of Detroit, this was something that was added after the last hearing, these Electri-coffee machines to hold or roast the nuts, and whether that service is out of Livonia or out of a place in Detroit—

" '*Mr. Solazzo:* It's not serviced out of Livonia because I am in charge of the Livonia operation.

" '*Mr. Stella:* Out of Detroit.

" '*Mr. Solazzo:* There is a public warehouse, I think it is in Highland Park, that has Electri-Cooker products in it, and I presume this is the warehouse that provides the nuts to these customers.

" '*Mr. Warren:* Do you know if General Foods has a technician that could repair and maintain these nut machines?

" '*Mr. Solazzo:* No, I don't. As I say, I'm not familiar with the cooker operation or the H & R coffee operation.

" '*Mr. McClintock:* Maybe we ought to bring Mr. Perry in. I have talked to him about this, but this question, I can't answer.

" '*Mr. Stella:* Perhaps he could send us a letter of some sort on how they operate the Electri-Cooker as well as the urn. Also, whether they sell coffee urns or loan coffee urns to the companies. Sometimes in order to get an account you would have to sell them an urn at cost or loan them an urn.

" '*Mr. McClintock:* I'm pretty sure they don't sell them, but let me give you a statement of the facts. I should have had him here this morning, but I didn't give him a timely notice. He was already on some deal down in Indiana, and I couldn't persuade him to come.

" 'But I will get a complete statement for each of us.'

"Other statements were made like 'maybe we ought to bring Mr. Perry in' * * * 'perhaps he could send us a letter of some sort' * * * 'but

let me give you a statement of facts', * * * . In another instance Mr. McClintock stated to the Board, 'I will get you a memorandum from Mr. Perry covering the operation.' * * * Whether this memorandum was in fact secured and submitted to the Board does not appear from the record."

The verification from Mr. Stan Perry, who is in charge of these operations, according to counsel for defendant-appellant was never furnished. There was a letter sent to the Board on November 14, 1969, from Mr. Frederic W. Heller, one of the attorneys for defendant-appellant, which purported to give information concerning the operations. We do not know whether this communication was accepted as evidence and considered by the Board or not. It appears that the information from the party in knowledge was not furnished. It would appear that the plaintiff's position is correct and that there was not sufficient evidence upon which the Board could determine that the defendant-appellant was not doing business in the City of Detroit, as to its operations of the H & R Coffee Service.

We affirm the reversal and remanding of the matter by the circuit court to the Board for further proceedings, but with the further provision that the Board shall be governed by this opinion, *i.e.,* that the defendant-appellant Birds Eye Division's operations constituted doing business in the City of Detroit.

No costs, construction of a statute and ordinance being involved.

All concurred.