THE PEOPLE v. JOSEPH M. HILLHOUSE.

*Criminal law—Disqualification of prosecutor—Trial—Evidence— Larceny—Claim of right—Replevin.*

1. A prosecuting attorney, who is the attorney for the plaintiff in a pending replevin suit, is disqualified, under Act No. 32, Laws of 1883 (amendatory of How. Stat. § 557), from prosecuting the defendant in replevin for larceny alleged to have been committed in recapturing the property replevied, the title of the plaintiff in replevin, and the state of facts under which he claims to maintain his title to the property, being the same as those upon which the charge of larceny is predicated.

2. Where a respondent, charged with the larceny of property on which he held a chattel mortgage, claims to have taken it on the mortgage, it is error to permit the prosecution to prove by an attorney what advice he gave the respondent as to his *right* to so take the property.

3. It is error to permit the people to prove the principal case under the head of rebutting evidence.

4. Where a respondent on his cross-examination is questioned concerning irrelevant matter, the people are bound by his answers.

5. The recapture by a mortgagee of the mortgaged property, which an adverse claimant had replevied from him, is not *of itself* larceny; and if the jury find, by a fair preponderance of evidence, that the mortgagee found the horse running at large in the highway, and supposed that the plaintiff in the replevin suit had allowed him to so run at large, and so given up possession of the animal, they cannot convict.

6. In *all* cases where one in *good faith* takes another's property under a claim of right so to do, or of title in himself, he is exempt from the charge of larceny, however puerile or mistaken the claim in fact be, and the question of the *bona fides* of the respondent is for the jury.

Exceptions before judgment from Jackson. (Peck, J.) Argued May 1, 1890. Decided May 9, 1890.

Respondent was convicted of larceny. Conviction reversed. The facts are stated in the opinion.

*Blair, Wilson & Blair,* for respondent.

*B. W. Huston,* Attorney General, and *James A. Parkinson,* Prosecuting Attorney, for the people.

CHAMPLIN, C. J.  The defendant was convicted of the larceny of a horse.  The horse was owned by Edwin F. Hillhouse, a son of defendant, who brought the horse from Ohio for the purpose of putting him into the races. Soon after reaching Michigan, the horse got badly out of condition, and his owner was obliged to put up the entry fees, and, being impecunious, borrowed money from Mr. John W. Boardman, and gave him a mortgage upon the horse.  Defendant is a veterinary surgeon, who was then residing in Ohio, and at his son's solicitation he came to Jackson, and treated the horse, with a view of curing him of his ailments, and enabling him to enter the races. This was in August, 1887.  In June, 1888, and while defendant was still doctoring the horse, Boardman seized the horse under his mortgage, claiming that there was due to him $210.  At this time the defendant claimed a lien on the horse for his medical services for an amount of five or six hundred dollars.  To pay the amount due to Boardman, Nathan H. Staples, the complaining witness, and one Hunn advanced the money,—Staples furnishing $100, and Hunn $110.  Staples took the horse into his possession, and defendant continued to treat the horse until some time in October following.

In the month of September, 1888, Edwin F. Hillhouse executed to his father, the defendant, a chattel mortgage upon the horse to secure him for his medical services and money paid to and for his son, which mortgage was filed in the clerk's office.  In October, 1888, defendant took the horse out of Staples' possession, and Staples replevied it.  The replevin suit was tried, and defendant recovered a verdict, which was set aside by the court, on

the ground that defendant had treated two of the jurors to refreshments. That cause is still pending, and undetermined.

It was claimed on the part of Staples in the replevin suit, and he bases his right to the possession of the horse in that suit upon such claim, that at the time he advanced the $100 defendant asserted a lien of $500 or $600 upon the horse, for medical services in doctoring him, but agreed to waive such lien in favor of himself and Hunn until the advances were repaid, and that he might have the custody and possession of the horse until such advances were repaid, and that the horse was delivered to him under that arrangement. The defendant and his son deny that such was the agreement, and claim that nothing was said about waiving a lien, or giving to Staples a lien upon or possession of the horse; the son stating that the arrangement was that Staples and Hunn were to advance the money to get the horse out from under the Boardman mortgage, and to go in with him in putting the horse in the races in the fall of 1888, and share in his earnings, and get back their money in that way.

Both father and son testified to the way the horse came into the possession of Staples. They said that in April, 1888, they hired Staples to pasture the horse, and that he was in Staples' pasture until the disagreement, in October of that year, out of which the replevin suit grew. The mortgage to defendant was filed in the latter part of September, 1888, and, just before the expiration of the year, the defendant took possession of the horse, as he claims, under and by virtue of the mortgage. Before doing so, he spoke to the sheriff for assistance in getting a horse under a chattel mortgage, which he claimed. The sheriff asked him if he had a writ of replevin, and he said not. The sheriff told him he did not understand

what use an officer could be to him without such writ. It appears that he, about that time, took the advice of his attorney, who advised him he could take the horse upon his mortgage if he could do it peaceably, and without committing a trespass. He started, in company with one Bryant, in the evening, and drove to Staples' place in the town of Sandstone, and inquired of a neighbor if he had seen the horse in Staples' pasture, and borrowed a lantern to look for him. It appears that Staples lived a short distance from his farm, in the village of Parma, a part of which is in Sandstone, and had the horse in a stable. He was kept in a box-stall, without halter, and in the morning he found the door of the stall partly open, and the horse gone. The defendant claims he found the horse grazing by the side of the road, and took him by virtue of his chattel mortgage. He said he delivered him to Bryant, and claimed not to know where the horse was at the time of the trial. The jury found the defendant guilty of larceny.

This conviction cannot stand. It appears from the record before us, which contains all of the evidence, that the attorney who prosecuted the replevin suit for Staples against the defendant is the prosecuting attorney who procured his conviction of larceny, and, although in his brief filed on behalf of the people he claims that he acted very fair towards defendant, yet we cannot consider this claim, when applying the inhibition of the statute to the transaction. The statute is positive and peremptory that the prosecuting attorney shall not be permitted to prosecute, or aid in prosecuting, any person for an alleged criminal offense, where he is engaged or interested in any civil suit or proceeding depending upon the same state of facts, against such person, directly or indirectly. How. Stat. § 557. The title of Staples in the replevin suit, and the state of facts under which he claimed to main-

tain his property in the horse, were the same as the facts upon which the charge of larceny is predicated, and the prosecuting attorney was disqualified from acting as prosecutor. After the complaining witness was sworn, and gave his testimony, from which it appeared that the prosecuting attorney was his attorney in the replevin suit, and still was his attorney in that suit, objection was made by the counsel for defendant to the attorney prosecuting any further in the case, on the ground that he was disqualified under the statute above cited. The court overruled the objection, and the prosecuting attorney proceeded to the end of the case to conduct the prosecution. No conviction can be allowed to stand under such plain disregard of the statute.

This error is sufficient of itself to reverse the case, but others no less serious were committed. The court permitted the attorney who gave advice to the defendant respecting his right to take property under a chattel mortgage to testify to what counsel he gave him, and this against the objection of defendant's counsel. This was error.

It was also error to permit the prosecuting attorney to read in evidence a notice which he drew up and introduced upon the preliminary examination before the magistrate calling upon the defendant and Bryant to give notice then and there of the amount of the claim either of them had upon the horse, and where he then was, and that he be brought immediately to sale upon such claim after due public notice, and that said Staples be informed of the time and place of said sale. After reading this notice in evidence before the jury, the prosecutor recalled Staples, and against objection he was asked:

" *Q.* Have you ever received any notice or information of any sale of that horse on any chattel mortgage?

" *A.* I have not."

Under no view that can be taken was this testimony relevant.

Another harmful error was committed in permitting the prosecuting attorney to prove his principal case under the head of "rebutting evidence." This error was carried so far that twice after the prosecuting attorney had commenced his argument to the jury, after the close of the proofs, he was permitted to suspend his argument, and introduce further and material testimony in support of his principal case. *People v. Quick*, 58 Mich. 321. The course pursued by the prosecuting attorney impresses us as one which was far from affording the accused a fair and impartial trial. The zeal of the prosecuting attorney for his client evidently led him into some indiscretion.

The defendant presented himself as a witness in his own behalf, and upon cross-examination, among other improper questions which the court permitted the prosecutor to ask the defendant, he interrogated the witness thus:

" *Q*. Have you touched the horse's feet from the time it was replevied until you went up and stole it?"

The witness answered:

" Yes; I did not steal the horse."

His counsel then objected, and the court said: " That is an improper remark." The prosecutor, on cross-examination, called out from the witness that he did not tell Hunn that before Boardman should have the horse he would kill him, and afterwards was permitted to call Hunn to prove that he did tell him so. This was error. The inquiry and testimony were concerning irrelevant matter, and could not be contradicted by first calling it out, and then contradicting the witness by proof of such irrelevant matter. *Hamilton v. People*, 46 Mich. 186; *Driscoll v. People*, 47 Id. 413.

The court instructed the jury as follows:

"If you find from the evidence, beyond a reasonable doubt, that the horse, at the time Dr. Hillhouse took him, was not in Staples' possession, but was running at large in the road, and that Dr. Hillhouse supposed at the time that Staples had allowed him to run at large, and so give up his possession of him, a taking, under those circumstances, would not be sufficient to be the basis of larceny."

This was error. It was not necessary that the jury should find beyond a reasonable doubt that defendant found the horse running at large, or beyond a reasonable doubt that defendant supposed that Staples had allowed him to run at large, and so given up possession of him. If they found such facts to exist by a preponderance of proof, they could not convict.

The fact that Staples had obtained possession of the horse by a writ of replevin did not of itself make it larceny for the defendant in the writ to take the horse from his possession without his consent or knowledge. There is a wide difference between a trespass, though willful, and larceny. The felonious intent is an essential and inseparable ingredient in every larceny, and if a person takes property under a claim of right, however unfounded, he has not committed larceny. Here the defendant had had a chattel mortgage upon the horse for nearly a year, and from all that appears it was to secure him to some extent for a valid indebtedness, and which he believed he had a right to enforce if he could obtain peaceable possession of the property covered by it; and although his right was in dispute, and then the subject of controversy in a pending suit, it is difficult to see how, under the testimony disclosed in this record, he could be guilty of larceny. The felonious intent must be manifested by acts, and consists in appropriating the personal property of another to his own use, or its destruction, without the owner's consent, and without the

right or claim of right so to do, exercised or made in good faith.

In all cases where one in good faith takes another's property under a claim of right so to do, or of title in himself, he is exempt from the charge of larceny, however puerile or· mistaken the claim may in fact be. 2 Bish. Crim. Law (7th ed.) § 851, and cases cited in note 5; *Rex v. Hall,* 3 Car. & P. 409; 3 Chit. Crim. Law. 926; *People v. Eastman,* 77 Cal. 171 (19 Pac. Rep. 266). It is a matter of evidence for the jury whether it was *bona fide* so taken, or whether it was taken from the person actually in possession of it with felonious intent. 2 Russ. Crimes, 105.

The learned circuit judge very clearly instructed the jury in accordance with the principles above stated, but fell somewhat short of advising them of what bearing the replevin suit should have upon their considerations, and limited the effect of the replevin suit to the right of Staples to the possession of the property until the final determination of that suit. He should have instructed the jury upon this branch of the case that, if they should find that it was the intent of the defendant, in taking the property from Staples' possession,—if they found he did so take it, without Staples' consent, and without any right or *bona fide* claim of right under his chattel mortgage or otherwise,—to deprive Staples of the power to return the property, if return should be awarded in the replevin suit, then they would be justified in finding him guilty of larceny. *Com. v. Greene,* 111 Mass. 392.

For the errors pointed out the conviction must be set aside, and a new trial granted.

The other Justices concurred.