VERMEYLEN v KNIGHT INVESTMENT CORPORATION

Opinion of the Court

1. Fraud—Mere Mistake.

A mere mistake does not constitute fraud.

2. Fraud—Appeal and Error—Conspiracy to Defraud—Evidence —Clear and Satisfactory Proof.

Allegations of a conspiracy to defraud must be supported by clear and satisfactory proof and a judgment against a party based on a conspiracy to defraud should be reversed where the lower court record does not support the allegations.

3. Attorney and Client—Code of Professional Responsibility— Conflict of Interest—Professional Judgment.

The Code of Professional Responsibility and Canons provides that an attorney should exercise independent professional judgment on behalf of a client and that a lawyer shall not continue multiple employment if the exercise of his professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client (Code of Professional Responsibility and Canons, Canon 5, DR 5-105).

4. Appeal and Error—Court of Appeals—Issue Not Raised—Attorney and Client—Conflict of Interest.

The Court of Appeals has limited power to raise questions on its own; however, it may well have a duty to raise and decide an

References for Points in Headnotes

[1] 37 Am Jur 2d, Fraud and Deceit §§ 6, 220.

[2] 37 Am Jur 2d, Fraud and Deceit §§ 468–470, 487.

[3] 7 Am Jur 2d, Attorneys At Law § 34.

Constitutionality and construction of statute against public attorney representing private person in civil action. 82 ALR 2d 774.

[4] 5 Am Jur 2d, Appeal and Error §§ 545, 548–552.

Questions or legal theories affecting trust estates as subject to consideration on appeal though not raised below. 11 ALR 2d 317.

[5] 5 Am Jur 2d, Appeal and Error § 819.

[6] 30 Am Jur 2d, Evidence §§ 1032, 1034.

Admissibility of oral evidence to show that a writing was a sham agreement not intended to create legal relations. 71 ALR 2d 382.

issue *sua sponte* where counsel for the parties affected failed to raise the issue and an attorney's failure to raise the issue may have been a result of a conflict of interest between the parties represented by the attorney.

PARTIAL CONCURRENCE BY ALLEN, J.

5. APPEAL AND ERROR—JUDGES—FINDINGS OF FACT—CLEARLY ERRONEOUS STANDARD—COURT RULES.

   *A trial judge's findings of fact will not be disturbed on appeal where the fact findings are not clearly erroneous (GCR 1963, 517.1).*

6. EVIDENCE—PAROL EVIDENCE—PAROL EVIDENCE RULE—CONTRACTS —FRAUD.

   *The possible exceptions to the parol evidence rule which allow the admission of otherwise inadmissible parol evidence to prove fraud are not applicable where the plaintiffs offering evidence to prove the fraud are offering no testimony except that which would have shown that the plaintiffs understood a contract to say something other than what it clearly says on its face.*

Appeal from Macomb, Edward J. Gallagher, J. Submitted December 8, 1976, at Lansing. (Docket No. 21320.) Decided March 1, 1977.

Complaint by Robert E. Vermeylen and Joyce Vermeylen, and Walter Fiehler and Evelyn Fiehler, against Knight Investment Corporation for recovery of damages suffered as a result of the defendant's failure to comply with its agreements in a series of transactions involving real estate. A counter-complaint was filed by the defendant to enforce an agreement between plaintiffs Vermeylen and the defendant and seeking damages based on a conspiracy to defraud. Judgment for defendant on the complaint and on the counter-complaint. Plaintiffs appeal. Affirmed in part, reversed in part and remanded.

*Wenger, Vande Vrede & Lavigne, P. C.,* for plaintiffs.

*Frank R. Langton,* for defendant.

Before: D. E. HOLBROOK, P. J., and ALLEN and
D. C. RILEY, JJ.

D. E. HOLBROOK, P. J. This opinion was written
after Judge ALLEN's well-written opinion affirming
the trial court below. We agree with Judge AL-
LEN's opinion as to plaintiffs' claims on appeal,
however, we go one step further and also deal with
defendant's counterclaim. We vacate the judgment
against plaintiffs Fiehler on the basis that there is
no evidence of a conspiracy to defraud.

Plaintiffs Walter and Evelyn Fiehler had no
dealings with defendant Knight Investment Corpo-
ration, and apparently spent a great deal of money
on improvements and made several mortgage pay-
ments during the time when both their coplain-
tiffs, the Vermeylens, and the defendant Knight
Investment, refused to make these mortgage pay-
ments, apparently because of disagreements be-
tween the Vermeylens and Knight Investment.
The facts clearly indicate that these plaintiffs
should have been separately advised by counsel. It
was counsel's duty to carefully advise plaintiffs
that separate counsel for each was advisable, if not
compelled. Conflict arose between the Vermeylens
and the Fiehlers. It certainly appears that this
conflict persists on appeal. Why counsel did not
challenge the counter-complaint is not apparent.
At trial the court indicated that it entertained
substantial doubt as to the possibility of finding a
conspiracy to defraud, however the court subse-
quently, and erroneously, changed its mind and
made the following finding:[1]

---

[1] At trial the court indicated his feelings as to defendant's allega-
tions of a conspiracy to defraud:

"I will expect from each of you and I will give you thirty days, I

"To summarize, the Defendant alleges a conspiracy between the four Plaintiffs to defraud the defendant. *The Court finds this to be true in the very broad meaning of the word 'conspiracy'.* Mr. Fiehler's considerable knowledge in the field of real estate could lead him nowhere else but to believe that he was wrong. As to the position of Evelyn Fiehler, while it is difficult to determine, she having very little if any involvement in the transactions involved in suit, yet nevertheless the property involved was titled in her name and the Court would have to assume that the Plaintiff Walter Fiehler, both because of experience in the real estate field and because of the fact that he was the husband of Plaintiff Evelyn Fiehler, acted for her and his activities relative to the property must be assumed to be hers also. So far as Plaintiffs Vermeylen are concerned, all of the testimony indicates that Robert Vermeylen knew very well what he was doing and further indicates that Plaintiff Joyce Vermeylen, while she apparently did not approve, knew also what she was doing. Hence, the result of the activities of the four, whether actual or imputed, was to attempt to work a fraud upon the Defendant Knight Investment Corporation, and to cloud the title to premises which were sold to them. The Statutes do not condone this." (Emphasis added.)

A review of the complex facts herein illustrates

want the whole thing completed in thirty days. Submit any written submissions that you wish in case law and drawing from your notes or from the transcript any comments or law regarding conspiracy between Vermeylens and Fiehlers and damages to the Defendant, which I doubt it.

* * *

"Breach of the covenants in the deed—I will expect that is something you will cover as I said, statutory damages and the damages out of the filing of this lis pendens, and if you want to pursue the conspiracy theory, I will expect some case law alluding to the transcript will convince me of that, because I'm not convinced that there was an actual conspiracy between Vermeylen and Fiehler. To damages, the Defendant, I think whatever Vermeylen and Fiehler did may have damaged the Defendant, but whether or not it was a conspiracy, I don't know. I have some strong doubts."

We do not know what led the court to erroneously change its opinion.

the impropriety of a finding of conspiracy to defraud and the probability of inadequate knowledge, ignorance, fear and lack of proper counsel of the plaintiffs Fiehler.

In 1964 plaintiffs Vermeylen purchased a house by means of a land contract from coplaintiffs, the Fiehlers. The purchase price was $16,500. Vermeylens signed a note to Mr. Fiehler for $4,000 as down payment and the remainder, $12,500, was to be paid monthly as a land contract. In 1970 Mr. Fiehler asked the Vermeylens to refinance the home by obtaining a mortgage. In late 1970 this was accomplished and a mortgage was executed.

In 1972 the Vermeylens decided to sell the house, apparently because of dissatisfaction with the size of the house and the size of their monthly payments. Robert Vermeylen then contacted an agent of defendant with regards to sale of this house. Mr. Vermeylen wanted $1,200 for his equity in order to have sufficient funds for a down payment on another home. This was agreeable to defendant. The purchase agreement was entered into. Apparently Mrs. Vermeylen did not initially sign the agreement and was unhappy with it. She testified that she did sign the agreement after defendant, in writing, agreed to find a suitable home for the Vermeylens. The Vermeylens did later find another home, but apparently did so on their own after dissatisfaction with the homes shown them by defendant.

On April 19, 1972, a closing was scheduled. At the closing defendant agreed to assume and pay the mortgage. However, after deduction of closing costs, miscellaneous expenses and so on, plaintiffs only received approximately $275 for their equity. The Vermeylens testified that this made them very unhappy but that they were forced to sign

since they had already made an offer to purchase a new home.

At this point the plot thickens. Apparently plaintiffs Vermeylen were given 60 days to vacate. After that time rent was to be charged them. Mortgage payments were not made by defendant. Apparently defendant wanted plaintiffs off the premises before they would begin payments. Plaintiff Mr. Vermeylen claimed that defendant advised him that he did not intend to make *any* payments. On July 10, 1972, the Vermeylens received a notice of delinquency from the mortgage company. As of this date defendant had not assumed the mortgage.

Mr. Fiehler now reentered the picture. He apparently inquired as to the status of payments on the promissory note which Mr. Vermeylen had signed as a downpayment on the land contract when the property was initially purchased. Vermeylen then informed Mr. Fiehler that he had sold the house, but that the purchasers had apparently backed out of the deal. Mr. Fiehler was shown the purchase agreement. There was a dispute between Mr. Fiehler and Mr. Vermeylen at trial as to whether Mr. Fiehler was apprised of the fact that a deed was signed. Nevertheless, Mr. Fiehler did check with the mortgage company and found that the mortgage had not been assumed.[2] Mr. Fiehler did not check with defendant. Also at this time, the deed from Vermeylen to Knight had not been recorded.[3] To settle their financial differences Vermeylens and Fiehlers agreed to transfer title from Vermeylens to Fiehlers. A deed was executed on August 1, 1972. Mr. Fiehler did not

---

[2] Defendant did not make any mortgage payments until November of 1972.

[3] This deed was recorded on August 9, 1972, approximately eight days after the deed from Vermeylens to Fiehlers was executed.

record this deed until November 21, 1972. Why anyone who was engaging in a conspiracy to defraud would leave a deed unrecorded has not been explained to us, particularly when that person had over 30 years experience as a real estate broker. Mr. Fiehler also paid the mortgage arrearage and subsequently paid additional payments on the mortgage. Some time after September 1, 1972, Mr. Fiehler made substantial repairs to the premises. After a representative of defendant found Mr. Fiehler on the premises and both parties then realized that something was amiss, defendant, accompanied by Mr. Fiehler, went to see Mr. Vermeylen. A verbal confrontation occurred between Mr. Vermeylen and the representative of defendant. However, Mr. Fiehler did not engage in this confrontation. Vermeylen explained to defendant that he transferred the second deed because Knight had "reneged on the agreement". It was apparent that the primary dispute herein was between Vermeylens and defendant. However, Vermeylen and Fiehler apparently sought the advice of counsel together after this confrontation. This lawsuit was then filed and a lis pendens was placed on the property. Defendant then counterclaimed on the agreement between defendant and Vermeylens and also alleged a "conspiracy to defraud".

At this point there is no evidence of a conspiracy to defraud. A mere mistake does not constitute fraud. *Van Wie v Fidelity Trust Co,* 254 Mich 108; 235 NW 863 (1931). Mr. Fiehler apparently thought defendant had backed out of the purchase agreement. Defendant had not as yet assumed the mortgage nor recorded its deed. Defendant does not show how plaintiff Fiehler was unjustly benefited. In fact, even without a judgment for conspir-

acy against him, Mr. Fiehler will lose. Mr. Fiehler made substantial repairs and made payments on the delinquent mortgage for which the trial court properly determined he was not entitled to reimbursement by defendant. This was a mere mistake as to what had actually occurred between his coplaintiff Vermeylen and Knight Investment Corporation. There is no showing or evidence of any intent to defraud on the part of Mr. Fiehler. Mr. Fiehler, in fact, surrendered possession of the premises when confronted with the claim by defendant. The deed from Vermeylen to Fiehler was not immediately recorded, had Mr. Fiehler intended to defraud Knight, it would have been reasonable to expect him to immediately record his deed where Knight's deed was not recorded. Allegations of a conspiracy to defraud must be supported by clear and satisfactory proof. *Harvey v Lewis,* 357 Mich 305; 98 NW2d 599 (1959), *Lewis v Poel,* 9 Mich App 131; 156 NW2d 41 (1967).

Apparently plaintiffs' counsel based his entire case on one theory, that defendant had breached the agreement. He maintained that failure of defendant to make payments on the mortgage and pay the full amount agreed on for payment for Vermeylens' equity constituted a breach of the purchase agreement. Plaintiffs state in the brief at the conclusion of the summary of facts "It is all Plaintiffs' theory that Defendant, Knight Investment, breached its agreement by acts of commission and omission and created the issues of this lawsuit". The trial court herein expressly found:

"Perhaps it's a little unfortunate that Vermeylen and Fiehler were united as Plaintiffs, because Vermeylen's testimony and Mrs. Vermeylen's testimony indicate very definitely that Mr. Fiehler, and the knowledge would be attributable to Mrs. Fiehler, knew that they

had sold the property before they took the deed from them. And so, you can set aside any statute if he knew the property was conveyed, it was conveyed as to him or anyone else who had knowledge. The trip to the title company didn't do him any good. All I get from him was, he better see a lawyer, which would mean he had gotten a good end or a dead end, there is no way of explaining it. Mr. Fiehler knew that at the time he took the deed that Vermeylen had sold the property and interpretation of Mr. Vermeylen's testimony would be to the effect and Evelyn Fiehler—and he in particular said—Mr. Fiehler decided that the Defendant breached their contract and therefore they were setting aside the deed which Vermeylen had given to the Defendant, obviously the two of them together or any one of them alone does not have the power to do that. They cannot set aside that contract. They might be able to set aside in the Courtroom, who knows, but they certainly couldn't set it aside themselves. Walter Fiehler took no title to the property and once more the mortgage payments were made with the knowledge that the property had been conveyed to the Defendant here."

Nevertheless, this again does not illustrate fraud, only mistake or ignorance. There was also a dispute between both plaintiffs Vermeylens and Fiehlers as to whether Fiehler had knowledge of the signing of the deed to Knight. There was also a dispute as to the amount owed Fiehlers by Vermeylens on the promissory note representing the initial down payment. Facts arose which should have tipped off plaintiffs' counsel early that he was representing conflicting interests. Counsel explained at trial:

"Your Honor, this case has presented a strange situation to me which I never encountered before, being that the ignorance of the parties in regard to real estate is only exceeded by their ignorance of the rules of law; and the facts of counterclaim and counter suit which I have explained orally, but until the Court deems and

the parties see the events, understand the full gravity of the matter. It appears as if my clients, who I took on in good faith, and who still have some faith in perhaps myself; I would think so; I would hope so; desire that there, to, or, strike that; see that there are maybe some conflicts between themselves in regards to the counter-claim, in particular, the conspiracy charges; and see where there may be some particular points where they may be at odds. And also feel that there may be some prejudice to their case on the conspiracy charge where they're both represented by the same counsel; and based on that as opposed to almost anything else, they desire, I believe, at this time to obtain another attorney to represent them on that particular counterclaim; and it is *not my motion at this time to necessarily drop them,* although I will not oppose any motion or any request of theirs to have another attorney represent them in this matter." (Emphasis added.)

Apparently this fact was brought out by defense counsel at the initiation of this action.

"Your Honor, I think that I raised this problem with counsel at the initial start after the filing of this plead-ing. We talked about it many times, in our motions, and so on. I have raised this problem numerous times; I have raised it again at pretrial conference; I advised him I was going to be filing a counterclaim, which I did, alleging what I have; he is, as of yesterday the problem was presented, started, you know, it came to the head yesterday, at that point the clients agreed to proceed. We have come into the Court ourselves; we've been here two days almost, a day and a half; we are ready to defend the action and proceed with our counterclaim. I think we have the right to proceed regardless of any conflicts or the feelings of the parties in relation to this particular attorney or the claims being made against them."

It certainly appears that there was sufficient warn-ing prior to trial. The canons of ethics expressly

provide that counsel shall avoid this situation.[4] Even if it was Mr. Fiehler's idea to share counsel with the Vermeylens, counsel should have fully advised the parties of potential conflicts. We fear that failure of coplaintiffs to be separately represented led to the trial court's improper finding of a "conspiracy to defraud".

The trial court's finding of a conspiracy, in the broadest sense of the word, to defraud defendant and the resulting judgment against plaintiffs Fiehler is not supported by the record. See, *Crippen v Chatterton,* 228 Mich 532; 200 NW 163 (1924), and *Baldwin v Escanaba Liquor Dealers' Association,* 165 Mich 98; 130 NW 214 (1911). This issue has not been raised by plaintiffs, however, the conflict of interest of counsel which continues on appeal is obviously a major factor in failure to raise the issue. Our function is to dispense justice, and we are given the limited power to raise questions on our own. In fact, we may well have the duty to raise this issue. Our Supreme Court noted:

"There is no hard and fast rule that appellate courts, sitting either in law or equity, cannot and, hence, do not raise and decide important questions *sua sponte.* Indeed, a mere glance at available precedent will disclose the contrary.* True, the power is exercised spar-

---

[4] Canon 5 indicates that "a lawyer should exercise independent professional judgment on behalf of a client". The disciplinary rules further provide for protection for clients.

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." DR 5-105(B) and (C).

ingly and with full realization of the restrictions and limitations inherent in the employment thereof.

---

"* See Professor Campbell's thesis: 'Extent to which courts of review will consider question not properly raised and preserved.' (7 Wis L Rev 91); *Auditor General v Bolt,* 147 Mich 283 [111 NW 74 (1907)]; *Thomas v Morton Salt Co,* 258 Mich 231 [242 NW 235 (1932)]. In *Thomas* this Court went so far as to raise and decide a question on which a circuit court judgment was *reversed—not affirmed."* (Emphasis in original.) *City of Dearborn v Bacila,* 353 Mich 99, 118; 90 NW2d 863 (1958).

---

We remand and vacate judgment against plaintiffs Fiehler. Mr. Fiehler made mortgage payments for which defendant was apparently responsible. In addition, he made substantial repairs for which he will not be compensated. Mr. Fiehler also vacated the premises when confronted with Knight's claim of ownership of the premises. There has not been any showing of a conspiracy to defraud. Whether a judgment against plaintiffs Vermeylen is justified is a matter for trial court resolution. We do affirm the trial court's finding against plaintiffs on their complaint for the reasons stated in Judge ALLEN's opinion.

D. C. RILEY, J., concurred.

ALLEN, J. *(dissenting in part, concurring in part).* Plaintiffs and counter-defendants sued to recover alleged damages suffered in a series of transactions involving the same piece of real estate. The principal cause of the lawsuit was plaintiffs Vermeylen's unfortunate decision to sell the property to their coplaintiffs without bothering to go through the inconvenience of reacquiring the property from the defendant and counter-plaintiff which had already purchased the property from

them. The trial judge found no cause of action on the plaintiffs' complaint and awarded damages of $9,427.50 on the defendant's counter-complaint. The plaintiffs have appealed, but appear only to challenge the dismissal of their own complaint.

I would affirm the trial judge's ruling that the plaintiffs failed to demonstrate any damage to their credit rating, let alone any wrongful damage. The finding was not clearly erroneous. GCR 1963, 517.1.

I would also affirm the exclusion of certain testimony offered by the plaintiffs to contradict the terms of a fully integrated written contract for the sale of the subject property. *Union Oil Co of California v Newton,* 397 Mich 486; 245 NW2d 11 (1976). The plaintiffs appear to have offered no testimony except that which would have shown that the plaintiffs understood the contract to say something other than it clearly says on its face. Therefore, possible exceptions to the parol evidence rule which would allow proof of fraud are not applicable here.

Finally, I would affirm the trial judge's ruling that plaintiffs Fiehler were not entitled to recover amounts expended for mortgage payments and improvements. The judge found that the Fiehlers had actual knowledge of the previous sale to the defendant. That finding was not clearly erroneous, GCR 1963, 517.1, and it precludes any holding that the defendant was *unjustly* enriched or that the Fiehlers were otherwise entitled to recover for the improvements. *Etherington v Bailiff,* 334 Mich 543; 55 NW2d 86 (1952).

The plaintiffs' failure to brief or argue any matters relating to the judgment on the counter-complaint is unexplained. My vote to affirm the other rulings should not be read as expressing any opinion on that aspect of the case.

I would affirm.