PEOPLE v KARMEY

Docket Nos. 30380, 30381. Submitted March 14, 1978, at Detroit.—
    Decided November 6, 1978. Leave to appeal denied, 406 Mich
    —.

    Defendant Abraham Karmey was convicted of conspiracy to
    break and enter with intent to commit larceny and receiving
    and concealing stolen property over the value of $100 in Wayne
    Circuit Court, Richard D. Dunn, J. At trial the prosecutor,
    without objection, played a tape recording of a conversation
    between defendant and the chief prosecution witness, then
    withdrew the tape as a proposed exhibit because it was largely
    unintelligible. On rebuttal the prosecutor, this time over de-
    fendant's objection, was permitted to replay the tape, which
    was then allowed into evidence. Defendant claimed that allow-
    ing the playing of the tape at that time constituted allowing
    the prosecutor to renew his case in chief and that the tape did
    not provide a clear and direct contradiction of the defense
    witnesses' testimony. Defendant appeals. Held:

    1. Proper foundation for admission of sound recordings into
    evidence consists of: (1) a showing that the recording device was
    capable of taking testimony, (2) a showing that the operator of
    the device was competent, (3) establishment of the authenticity
    and correctness of the recording, (4) a showing that no changes

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 436.
    Admissibility of sound recordings in evidence. 58 ALR2d 1024.
    Omission or inaudibility of portions of sound recording as affecting
        its admissibility in evidence. 57 ALR3d 746.
    Admissibility in evidence of sound recording as affected by hearsay
        and best evidence rule. 58 ALR3d 598.
[2, 7] 29 Am Jur 2d, Evidence §§ 250, 269.
[3] 46 Am Jur 2d, Judges §§ 181, 199, 220.
    Disqualification of judge by state, in criminal case, for bias or
        prejudice. 68 ALR3d 509.
[4] 81 Am Jur 2d, Witnesses §§ 419, 420.
[5] 16 Am Jur 2d, Conspiracy §§ 9-11.
    50 Am Jur 2d, Larceny § 58.
[6] 5 Am Jur 2d, Appeal and Error § 891.
[8] 81 Am Jur 2d, Witnesses §§ 518, 612.
    5 Am Jur 2d, Appeal and Error § 776.

have been made in the recording, (5) a showing of the manner of preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made, without any inducement; in the absence of a proper foundation, admission of the tape recording was error.

2. Rebuttal is limited to the refutation of relevant and material evidence bearing on an issue properly raised in a case by way of defense or in the prosecutor's case in chief; where not properly raised in this manner, the device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue, and both the statement and the veracity of the witness are then collateral matters and the prosecutor is bound by the response.

3. A criminal defendant's claim on appeal that the examining magistrate who bound him over for trial after his first preliminary hearing should have disqualified himself from presiding over a subsequent preliminary hearing is without merit in the absence of a showing of bias or prejudice in fact on the part of the examining magistrate as required by court rule.

Reversed and remanded.

V. J. Brennan, J., dissented. He would hold that the only issue with regard to the tape recording which was properly before the Court of Appeals was the issue of the propriety of the tape recording as rebuttal evidence and that it directly refuted the testimony of two defense witnesses and was, therefore, proper rebuttal evidence. He would also hold that the impeachment by extrinsic evidence at defendant's trial was harmless error in light of the overwhelming evidence against him. He would affirm.

## Opinion of the Court

### 1. Evidence—Admissibility—Sound Recordings.

Proper foundation for admission of sound recordings into evidence consists of: (1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that no changes have been made in the recording, (5) a showing of the manner of preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made, without any inducement.

### 2. Witnesses—Evidence—Rebutal—Collateral Matters—Cross-Examination.

Rebuttal is limited to the refutation of relevant and material

evidence bearing on an issue properly raised in a case by way of defense or in the prosecutor's case in chief; where not properly raised in this manner, the device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue, and both the statement and the veracity of the witness are then collateral matters and the prosecutor is bound by the response.

3. CRIMINAL LAW—PRELIMINARY HEARING—DISQUALIFICATION OF JUDGES—APPEAL AND ERROR—COURT RULES—BURDEN OF PROOF.

A criminal defendant's claim on appeal that the examining magistrate who bound him over for trial after his first preliminary hearing should have disqualified himself from presiding over a subsequent preliminary hearing is without merit in the absence of a showing of bias or prejudice in fact on the part of the examining magistrate as required by court rule (GCR 1963, 405.1[3]).

4. WITNESSES—COURTS—TRIAL—JUDICIAL QUESTIONING—APPEAL AND ERROR.

Questions asked of a witness by the trial court did not have the effect of unfairly influencing the jury's verdict against the defendant and, therefore, there was no error, where a careful review of the entire record shows that the trial court's questions had the apparent intent and effect of resolving ambiguities and bringing out additional relevant testimony that potentially could have aided either the prosecution or the defense and no interjection of the trial court's personal views or bias is shown.

5. CONSPIRACY—CRIMINAL LAW—INTENT—EVIDENCE—INFERENCES—BREAKING AND ENTERING.

A defendant's overt acts of supplying money to buy tools used in an attempted breaking and entering, and supplying tools used in a breaking and entering coupled with his knowledge that the crime was to be committed are sufficient to form the basis of an inference of intent sufficient to support a conviction of conspiracy to break and enter with intent to commit larceny.

6. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY.

In the absence of an objection to the charge, the Court of Appeals will reverse a defendant's conviction based on an erroneous instruction to the jury only upon a demonstration of manifest injustice.

7. EVIDENCE—REBUTTAL.

Rebuttal testimony is proper where it is limited to the refutation
or impeachment of relevant and material evidence properly
raised by the opposing party.

8. EVIDENCE—IMPEACHMENT—COLLATERAL MATTERS—HARMLESS ERROR.

*Impeachment by the use of extrinsic evidence on a collateral
matter is improper; however, it is harmless error where there
is overwhelming evidence against the defendant.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Colista, Green, Green & Adams,* for defendant.

Before: R. M. MAHER, P.J., and V. J. BRENNAN and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Defendant was convicted by a jury of conspiracy to break and enter a business place with intent to commit larceny, in violation of MCL 750.157a; MSA 28.354(1) and MCL 750.110; MSA 28.305, and of receiving and concealing stolen property over the value of $100, in violation of MCL 750.535; MSA 28.803. Defendant was sentenced to a term of from six to ten years imprisonment on the first charge and from three to five years imprisonment on the second charge. Defendant appeals as of right, raising numerous issues.

Defendant had originally been charged with having conspired with Gregory Teeter, the chief prosecution witness, to break and enter the Fairway Jewelry Store in East Detroit with intent to commit larceny therein. Defendant was also

charged with receiving and concealing the stolen property from the break-in, in an amount over $100.

Defendant's major contention on appeal is that a tape-recorded conversation between defendant and Gregory Teeter, which contained inculpatory statements, was erroneously admitted into evidence during the prosecution's rebuttal.

The prosecution originally tried to introduce a portion of the recording at issue in its case in chief to prove the existence of the conspiracy between defendant and Teeter with respect to the burglary of the Fairway Jewelry Store and, further, to show that defendant had purchased from Teeter stolen goods from that burglary. The tape recording was marked as Exhibit 13 and was played to the jury without objection for approximately five minutes. After that time, the prosecutor withdrew the tape as a proposed exhibit because of the largely unintelligible nature of the recording. The prosecutor explained to the trial court that "obviously, it is too bad for us to get any entry value out of it, so I withdraw the tape even as a proposed exhibit".

On rebuttal, the prosecution again decided to play the tape for the jury. Defense counsel objected to the playing of the tape recording during rebuttal, arguing that it would be allowing the prosecutor to renew his case in chief. Defense counsel further argued that the tape did not provide a clear and direct contradiction of the defense witnesses' testimony. The trial court overruled the objection and allowed the prosecution to play the tape recording.

After the tape was played, the prosecution called two rebuttal witnesses and then moved for the admission of the tape recording. Defense counsel's primary objection was that because of the great

amount of interference in the tape recording, it
was incomprehensible. In response the trial court
stated:

"Well, the Court admitted the entire tape even
though part of it was incapable of being understood.
And it was admitted in the form that it was in the
original taping. There is no question about it that there
was a lot of interference. But I am going to admit the
entire tape."

The prosecutor mentioned the tape recording
during rebuttal argument:

"*Corroboration* is also in the tape and discussions on
the tape, particularly the last portion of the last side of
what is possible to be heard.

"Perhaps one of the greatest amounts of the value on
the tape is the fact that the two were together and
talking. And whether it was a heated discussion or
somewhat friendly discussion or a business discussion.
The fact that there was discussion of costs and values
and amounts and per centages *[sic]* and what is the
markup on a Timex, I think is certainly relevant."
(Emphasis added.)

We empathize with the dilemma faced by the
trial court in this case. It is a problem which
confronts trial courts when part of a deposition is
destroyed. The trial court must balance competing
interests. Here, on the one hand, the tape con-
tained at least arguably relevant evidence. On the
other hand, at least part of the tape was incompre-
hensible. The trial court did try to make the
requisite weighing of the interests. However, we
must observe that the trial court failed to utilize
the applicable standards of law while so doing.

Accordingly, we are constrained to reverse and remand this case for a new trial.[1]

Problems of audibility of tape recordings were considered by this Court in *People v Taylor,* 18 Mich App 381; 171 NW2d 219 (1969). This Court set forth what constitutes a proper foundation:

"(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement." 18 Mich App at 383–384.

Accord: *People v Frison,* 25 Mich App 146, 148; 181 NW2d 75 (1970), noting further:

" 'The fact that a recording may not reproduce an entire conversation, or may be indistinct or inaudible in part, has usually been held not to require its exclusion; however, the recording may be rejected if it is so inaudible and indistinct that the jury must speculate as to what was said. It has been held that unless the unintelligible portions of a tape recording are so substantial as to render the recording as a whole untrustworthy, the recording is admissible and the decision whether to admit it should be left to the sound discretion of the trial judge,' 29 Am Jur 2d, Evidence, § 436, p 495."

Although the prosecution did offer some foundation testimony through Detective Smith, we con-

---

[1] The combination of the fact that an improper foundation was used to admit the tape, regarding its inaudibility, and the fact that the tape only corroborated Detective Smith's testimony prompts our decision in this matter.

clude that it was insufficient to meet the *Taylor-Frison* requirements.

Our resolution of this issue makes it unnecessary to rule on defendant's contention that the tape recording constituted improper rebuttal evidence. However, it is clear that the tape is merely corroborative of the prosecution's case in chief in a general way and does not provide a clear and direct contradiction of the proffered testimony of the defense witnesses. Additionally, we disapprove of saving a tape recording until rebuttal merely for use as a final mechanical arbiter solving the credibility question between two conflicting stories. Trial courts should not admit that type of evidence on rebuttal where it is argued that the evidence is merely cumulative in nature.

Defendant also contends that the trial court committed reversible error when it allowed as rebuttal evidence Detective Smith's testimony because the testimony concerned a collateral matter raised by the prosecution on cross-examination of a defense witness.

Over defense counsel's objection, the prosecutor was allowed on cross-examination to ask defendant's wife whether there were 17 sets of used golf clubs and golf bags in the basement and garage of their home. The trial court allowed the answer to test the credibility of the witness. She testified that at the time the search warrant was executed there were only two sets.

On rebuttal, Detective Smith testified over defense counsel's objection that he had personally observed approximately 17 sets of various brand names of golf bags and clubs at the time the search warrant was executed. In response to defense counsel's objection, the trial court ruled that this was the proper subject of rebuttal because

there had been testimony about the presence of certain equipment.

This issue is controlled by a recent decision of this Court, *People v Roeder,* 79 Mich App 595; 262 NW2d 872 (1977). There:

"Defendant testified at trial, and during cross-examination was asked by the prosecutor whether she had shown Mrs. Wenzel, who was her landlady, a scrapbook containing a newspaper article about the fire in her parent's home. Defendant denied having done so. Over the objection of defendant, the prosecutor was permitted to recall Mrs. Wenzel to the stand to testify in rebuttal that defendant had, in fact, shown her a scrapbook containing such an article." 79 Mich App at 601.

Quoting *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975), this Court noted:

"Rebuttal is limited to the refutation of relevant and material evidence—hence evidence bearing on an issue properly raised in a case.

\* \* \*

"The device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue.

"Both the statement and the veracity of the witness are then collateral matters and the cross-examiner is bound by the response. *People v Hillhouse,* 80 Mich 580; 45 NW 484 (1890)." 79 Mich App at 602.

This Court then concluded:

"In the case at bar, no evidence about the scrapbook was presented either in the prosecutor's case in chief or in the defendant's case. The entire issue of the fire at the home of defendant's parents was a collateral matter. Defendant was being tried on charges arising out of the fire which occurred at her mobile home, not the

earlier fire at her parents' house. Whether or not defendant kept a clipping about the earlier fire has no probative value on the question whether defendant intentionally burned her trailer home. As a collateral matter, the subject of the scrapbook concerning the earlier fire is appropriate neither for substantive rebuttal nor for extrinsic impeachment of defendant's testimony. *People v Bennett, supra, People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974)." 79 Mich App at 602–603.

We do not suggest that the rebuttal testimony offered in this case might never be admissible. However, on the facts of this case—with the evidence offered only to test the credibility of the witness—it must be held that the testimony went to a collateral matter. Thus, *Roeder* being dispositive, it was error to permit extrinsic impeachment of the witness's testimony. We specifically decline to rule whether the error was harmless. See the rules set forth in *People v Swan,* 59 Mich App 409; 229 NW2d 476 (1975).

Defendant also claims that the trial court committed reversible error by admitting the tape recording because it contained inculpatory statements made by defendant to a prosecution witness (who was equipped with a body transmitter placed there by police authorities) and no *Miranda*[2] warnings were given. The United States Supreme Court decided this question adversely to defendant's position in *Hoffa v United States,* 385 US 293; 87 S Ct 408; 17 L Ed 2d 374 (1966).

Defendant further argues that the examining magistrate who bound him over for trial after his first preliminary examination should have disqualified himself from presiding over the second pre-

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

liminary examination.[3] Defendant has failed to show bias or prejudice in fact on the part of the examining magistrate, as is his burden under GCR 1963, 405.1(3); therefore, his claim is without merit. *People v Tillman,* 59 Mich App 768; 229 NW2d 922 (1975).

Defendant also contends that the trial court showed bias and prejudice to the jury by the manner in which he questioned chief prosecution witness Teeter about defendant's occupation.[4] A similar contention was raised in *People v John Moore,* 78 Mich App 150; 259 NW2d 403 (1977). There, this Court responded:

"A careful review of the entire record shows that the trial court's questions had the apparent intent and effect of resolving ambiguities and bringing out additional relevant testimony that potentially could have aided either the prosecution or the defense. The record does not show any interjection of the trial court's personal views or bias. The trial court's questions did not have the effect of unfairly influencing the jury's verdict against the defendant and therefore there was no error. *People v Redfern,* 71 Mich App 452, 456; 248 NW2d 582 (1976). *People v Gray,* 57 Mich App 289, 295; 225 NW2d 733 (1975)." 78 Mich App at 155.

---

[3] The second preliminary examination was ordered by Wayne County Circuit Judge John R. Kirwan because defendant was not represented by retained counsel of his choice at the first proceeding.

[4] The particular questions assigned as error are as follows:

"THE COURT: And do you know what his occupation is?

"THE WITNESS: Yes, I know.

"THE COURT: What is his occupation?

"THE WITNESS: Well, I knew he was involved in illegal things. I don't know exactly what he did.

"MR. BOGGS [Defense counsel]: Your Honor, I am going to object.

"THE COURT: What did he do for a living that you knew? Is he a doctor? A dentist? A jeweler? Or what is he?

"THE WITNESS: Oh, I knew from his kid's mouth before that.

"THE COURT: You don't know exactly?

"THE WITNESS: No, just from his kids.

"THE COURT: All right."

*Moore* is controlling here. The questioning was not lengthy. There was no suggestion from the trial court that it thought defendant's occupation to be anything but legal. Defendant's claim is without merit.

Defendant further argues that the prosecutor's closing argument was reversibly erroneous because he was permitted to explain to the jury the immunity situation pertaining to the chief prosecution witness. The prosecutor's argument was made in direct response to defense counsel's closing argument *and* was not prejudicially inflammatory. There was no error. *People v Pomranky,* 62 Mich App 304; 233 NW2d 263 (1975), *lv den* 397 Mich 823 (1976).

Defendant also claims that the prosecutor failed to fulfill his obligation to reveal to the jury the full extent of the deal that the prosecutor had made with the chief prosecution witness in exchange for his testimony. The claim is wholly without merit. Throughout the trial there was a continuing effort to keep the jury aware of the fact that the chief prosecution witness had been granted immunity in exchange for his testimony.

Next, defendant contends that there was insufficient evidence to support a conviction of conspiracy to break and enter with intent to commit larceny. The jury could reasonably find that there was an agreement between defendant and the chief prosecution witness to commit the crime of breaking and entering with intent to commit larceny on the basis of the evidence presented. The overt acts taken by defendant in furtherance of that crime,[5] coupled with his knowledge that the crime was to be committed are sufficient to form

---

[5] Defendant supplied the money for the purchase of tools at K-Mart to use in a first aborted attempt. Defendant also gave the chief

the basis of an inference of intent. See *People v Atley,* 392 Mich 298, 310–311; 220 NW2d 465 (1974).

Finally, defendant contends that the trial court committed reversible error in its conspiracy instructions. Defendant's trial counsel did not request any jury instructions regarding the conspiracy charge. Neither did he indicate any objections to the trial court prior to the jury retiring for deliberations. In the absence of objection to the charge, this Court will reverse the defendant's conviction only upon a demonstration that manifest injustice has occurred. *People v Embree,* 70 Mich App 382; 246 NW2d 6 (1976). There was no manifest injustice.

Reversed and remanded.

R. M. MAHER, P.J., concurred.

V. J. BRENNAN, J. *(dissenting).* I must dissent from that portion of the majority's opinion dealing with the use of the tape recording and the introduction of Detective Smith's testimony regarding the 17 sets of golf clubs.

The majority's determination that the introduction of the tape recording constituted reversible error was based on three factors; (1) no proper foundation was laid, (2) the recording was so inaudible that it was rendered untrustworthy as a whole, and (3) the recording was not proper rebuttal evidence. Initially it must be noted that not only were factors one and two above not preserved by objections at trial, but they were not raised in any of the defendant's arguments on appeal. Al-

prosecution witness's brother some tools to use in the second successful break-in after the K-Mart tools had been abandoned during the first attempt.

though this Court has limited power to raise questions *sua sponte,* the present case does not constitute a proper subject for such action. See *Vermeylen v Knight Investment Corp,* 73 Mich App 632, 642; 252 NW2d 574 (1977). As to the admissibility of the tape recording I would address only that argument raised in the briefs, to wit: whether the recording constituted improper rebuttal evidence.

Rebuttal testimony is proper where it is limited to the refutation or impeachment of relevant and material evidence properly raised by the opposing party. *People v Bennett,* 393 Mich 445, 449; 224 NW2d 840 (1975); *People v Ebejer,* 66 Mich App 333, 340; 239 NW2d 604 (1976). In the present case the defendant's daughter testified that she and Gregory Teeter planned to "set up" the defendant and placed a paper bag containing some watches in a closet of the defendant's home. Later defendant's wife found the bag but did not call the police since she said it did not occur to her that the contents were stolen. This testimony, taking into account the reasonable inferences flowing therefrom, would tend to negate a finding that the defendant had knowledge of the stolen merchandise. The recording indicates defendant's knowledge of certain jewelry store burglaries and shows the defendant's participation in receiving the stolen goods. Thus the recording refutes the testimony of two defense witnesses pertaining to the defendant's lack of guilty knowledge and constituted proper rebuttal.

I agree with the majority that Detective Smith's testimony relating to the 17 sets of golf clubs was erroneously admitted as it goes to a collateral, nonmaterial issue. Impeachment by the use of extrinsic evidence on a collateral matter is improper. However, in light of the overwhelming

evidence against the defendant[1] I would hold the error harmless beyond a reasonable doubt. MCL 769.26; MSA 28.1096. See *People v Sherman Hall,* 77 Mich App 456, 461-462; 258 NW2d 517 (1977).

I would affirm the defendant's conviction.

---

[1] At trial Gregory Teeter testified that he burglarized Weinstein's Jewelry Store and after apprising defendant of the burglary, sold the stolen merchandise to defendant. Teeter then discussed with defendant a forthcoming burglary at the Fairway Jewelry Store and the defendant provided tools for the break-in. Upon successful completion of the Fairway burglary stolen merchandise was delivered to the defendant at his home. Teeter identified a watch taken from defendant's wrist as one he had stolen from Weinstein's. Various police officers testified as to their participation in the search of defendant's home wherein certain items of jewelry were confiscated. These items were subsequently identified as stolen merchandise from the Weinstein and Fairway jewelry stores.