# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

SALAH AL-SHARA,

       Defendant-Appellant.

UNPUBLISHED
July 23, 2015

No.  320628
Wayne Circuit Court
LC No.  13-005911-FH

Before:  SAAD, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of larceny by conversion (property valued between $1,000 and $20,000), MCL 750.362; MCL 750.356(3)(a).  The trial court sentenced defendant to 18 months' probation.  Because the prosecution presented insufficient evidence to establish beyond a reasonable doubt that defendant possessed the requisite criminal intent, we reverse.

This case arises out of a contract between complainant, who wished to purchase a vehicle, and defendant, who was a licensed buyer and seller of automobiles.  The contract was oral and memorialized only by a receipt for a deposit of $4,000 paid by complainant to defendant.

As part of his business, defendant will often search the country for a particular type of used car on behalf of a customer.  He testified that he will typically purchase a requested car at auction, where a pre-purchase inspection of the vehicle is not possible, but prices are significantly lower.  He then has the car delivered to Detroit where he pays to have any necessary repairs performed before delivering the vehicle to his customer.  Complainant agreed that this was her understanding of how defendant would obtain a vehicle for her.

On November 30, 2012, complainant and defendant met and complainant stated that she wanted to purchase a black 2010 Mercedes SLK with low mileage.  Defendant stated that he could obtain such a vehicle and that he would charge her $25,000, minus the value of her trade-in, and that he required a $4,000 deposit.  Delivery was to be made in 30 to 60 days.  Complainant paid defendant the $4,000, and defendant gave her a receipt listing the amount as a "deposit."  Complainant testified that she understood that this "deposit" was a down payment and fully refundable.  Defendant testified that he had required a deposit from complainant because he had been asked by her on several occasions in the past to locate cars, but that each

-1-

time he had previously purchased a vehicle at auction for her, she changed her mind and did not complete the purchase, causing defendant to lose money. Defendant testified that he told complainant that he would require her to leave a nonrefundable deposit on this occasion to ensure that she did not change her mind.

Complainant and defendant agree that defendant showed her a picture of a vehicle that matched her request. Complainant testified that she understood that defendant would be selling her that exact vehicle. Defendant testified that he showed complainant a photo of the type and quality of vehicle he thought he could obtain for her at auction and that the agreement was for a vehicle of that type, not the precise vehicle in the picture. The receipt did not reference any particular VIN number, referencing the vehicle only by make, model, and year.

Defendant testified, and the prosecution did not dispute, that he purchase the pictured SLK at a Houston auction for approximately $17,000 and paid an additional $600 to ship the vehicle north. Defendant further testified that when he purchased the car, he thought that it only had collision damage, but when it was inspected after being brought to Detroit, he learned that the transmission was cracked and that repair or replacement would be too costly given the price quoted. At some point thereafter, he sold the unrepaired car at auction at a loss.

Defendant testified that, after learning about the cracked transmission, he contacted complainant, explaining to her that the car was "no good" and that he would "find another one" for her. He thereafter requested her email address so that he could send her photos of three other vehicles that met her specifications. Complainant did not dispute this testimony. However, she refused to provide her email address to defendant, told him that she no longer wished to purchase a vehicle through him, and requested that he return the $4,000. Defendant refused to return the money, stating that it was a nonrefundable deposit, that his costs were in excess of that amount, and that he was willing to provide her with an equivalent vehicle.

Rather than pursuing a breach of contract claim or other appropriate civil remedy, complainant elected to file a police report with the Belleville Police Department against defendant for larceny. On March 12, 2013, police arrested defendant at his home for larceny by conversion. They seized $7,000 in cash and several vehicles at defendant's home, despite the fact that it is clear that the subject SLK was not present. Some of the seized vehicles belonged to a car dealer with whom defendant did contract work. Complainant texted defendant: "Give [the sheriff] my $4000 and this could all be over."[1] Defendant, through his counsel, was forced to obtain a court order requiring that the police returned all the seized property.

Defendant was arraigned in circuit court on July 10, 2013 and a bench trial was scheduled for October 10, 2013. On October 10, complainant failed to appear and the trial court dismissed

---

[1] Complainant also admitted to stating to a prosecutor that she wanted $20,000 from defendant. She explained that this statement was made in "jest."

the case without prejudice.[2]  The charge was later reinstated and a bench trial conducted on November 30 and December 20, 2013.  On January 10, 2014, the trial court found defendant guilty of larceny by conversion.

Defendant argues that the evidence was insufficient to support the trial court's conclusion that he possessed the requisite specific intent for larceny by conversion.[3]

A fundamental principle in our criminal justice system requires that, to convict a criminal defendant, the prosecution must prove every element of the charged crime beyond a reasonable doubt.  See *People v Allen*, 466 Mich 86, 90; 643 NW2d 227 (2002).  "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt."  *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).  "[A] reasonable doubt is an honest doubt based upon reason.  It is a state of mind that would cause the [factfinder] to hesitate when acting in the graver and more important affairs of life."  *People v Jackson*, 167 Mich App 388, 391; 421 NW2d 697 (1988) (citations omitted).

Larceny by conversion, codified as MCL 750.362, provides in relevant part:

> Any person to whom any money, goods or other property, which may be the subject of larceny, shall have been delivered, who shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money or other property, or any part thereof, shall be deemed by so doing to have committed the crime of larceny . . . .

We have identified the essential elements of larceny by conversion:

> (1) the property at issue must have some value, (2) the property belonged to someone other than the defendant, (3) someone delivered the property to the defendant, irrespective of whether that delivery was by legal or illegal means, (4) the defendant embezzled, converted to his own use, or hid the property with the intent to embezzle or fraudulently use it, and (5) at the time the property was embezzled, converted, or hidden, the defendant intended to defraud or cheat the owner permanently of that the property.  [*People v Mason*, 247 Mich App 64, 72; 634 NW2d 382 (2001) (quotation marks omitted).]

It is undisputed that defendant kept the $4,000 he obtained from complainant.  However, this act alone is insufficient to satisfy the fourth and fifth necessary elements.  Rather, defendant

---

[2] Following this dismissal, defendant apparently offered complainant $4,000 to resolve the matter.  The trial court ultimately refused to admit evidence of such offers but, as will be discussed below, whether this ruling was in error is irrelevant.

[3] Whether a defendant's conviction was supported by sufficient evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010).

must have intended to "defraud or cheat" complainant, i.e., he must have *knowingly* intended to *unlawfully* keep the $4,000. We conclude that there was insufficient evidence to establish this fact beyond a reasonable doubt.

Both defendant and complainant offered reasonable interpretations of the contract and accounts of its formation and terms. The fact that they apparently misunderstood each other does not render defendant criminally liable. If that were the case, then nearly every party found liable for breach of contract would also be guilty of larceny by conversion. The party being sued for breach of contract virtually always believes she is entitled to the funds in her possession; the fact that she is later adjudicated to be in breach of the contract does not render her criminally liable. For criminal liability to attach to defendant's actions, there must be a finding that defendant subjectively believed that the deposit was a fully returnable down payment and that no substitute vehicle could be provided. The trial court did not make such a finding and, after a review of the record, we cannot discern a basis for such findings.

In finding defendant guilty, the trial court relied on our opinion in *Mason*, 247 Mich App 64. However, that case is wholly distinguishable, both factually and legally.

Legally, in *Mason*, we were tasked with reviewing the circuit court's grant of the defendant's motion to quash five counts of larceny by conversion. *Id*. at 65. We review such an issue for an abuse of discretion on the part of the circuit court in finding that there was not *probable cause* to bind the defendant over on the charges. *Id*. at 70-71; MCL 766.13. By contrast, in this case, we review defendant's sufficiency of the evidence challenge de novo, and the prosecution must have proved the necessary elements *beyond a reasonable doubt*. *Harverson*, 291 Mich App at 177. Moreover, because a full trial was held in this case, we have the benefit of an entire record, as opposed to merely the evidence introduced at a preliminary examination.

Factually, *Mason* involved five separate complainants who had entered into written contracts with the defendant to purchase mobile homes. *Id*. at 66-69. The terms of the contracts were clear. Each complainant had provided the defendant with a down payment and, in some cases, additional monies. *Id*. The defendant accepted these payments, often depositing them in his personal accounts rather than those used for the business. *Id*. Each complainant, when they attempted to pick up the purchased mobile home, learned that the defendant's business had closed and that the defendant would neither provide them with a mobile home nor refund any money. *Id*.

In *Mason*, the contracts were written and there was no dispute as to their terms. By contrast, in this case, the contract was oral and there are several disputes as to its terms. In addition, defendant sought to satisfy the contract by providing a different vehicle of the ordered make and model, but complainant refused to consider them. In *Mason*, the defendant made the highly attenuated argument that once the cash deposits were paid to him, the cash was titled to

him and he could not convert his own property.[4] Here, defendant relies not on some legal fiction, but on his understanding of the contract.[5]

As noted above, the prosecution was required to prove beyond a reasonable doubt that defendant intended to retain the money while possessing the subjective knowledge that doing so was unlawful, i.e., in violation of the contract between himself and complainant. There was insufficient evidence to allow the trial court to reach such a conclusion; in fact, there was substantial evidence that defendant subjectively believed he was entitled to retain the $4,000 and, further, that this belief was either consistent with the contract or a good-faith error by defendant. See *People v Hillhouse*, 80 Mich 580, 586; 45 NW 484 (1890) ("There is a wide difference between a trespass, though willful, and larceny. The felonious intent is an essential and inseparable ingredient in every larceny, and if a person takes property under a claim of right, however unfounded, he has not committed larceny."). Complainant's testimony concerning her understanding of the contract, unsupported by any other evidence, is insufficient, as a matter of law, to establish defendant's specific criminal intent.

We reverse defendant's convictions and remand for an entry dismissing the charge against him with prejudice.[6]

/s/ Henry William Saad
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[4] The same was true in *People v O'Shea*, 149 Mich App 268; 385 NW2d 768 (1986), the other case cited by the prosecution.

[5] Moreover, although not legally dispositive, the fact that the *Mason* defendant illegally retained the down payments of five separate complainants under similar circumstances provides persuasive evidence that he was conducting a criminal enterprise. By contrast, in this case, we are presented with a single instance that appears to have been based on a genuine and good-faith contractual dispute.

[6] Because there was insufficient evidence to support defendant's conviction, and because the proper remedy is dismissal with prejudice, we need not address defendant's evidentiary argument. See *People v Mitchell*, 301 Mich App 282, 294; 835 NW2d 615 (2013).